FARMERS' COOPERATIVE COMPANY ET AL. v. BANK OF LEETON, Appellant.—4 S. W. (2d) 1068.

Division Two, March 24, 1928.

*Nick M. Bradley* and *M. D. Aber* for appellant.

550

*Montgomery & Rucker, S. J. Caudle, J. R. Rothwell* and *W. E. Owen* for respondents.

554

HENWOOD, C.—This case orignated in the Circuit Court of Johnson County. It was first heard on appeal by the Kansas City Court of Appeals and was decided by that court in an opinion written by TRIMBLE, P. J., with ARNOLD, J., concurring, and BLAND, J., dissenting. The case was certified to this court on the specified ground that the holding of the Kansas City Court of Appeals is in conflict with the holding of the St. Louis Court of Appeals in the case of Semmes v. Stecher Brewing Company, 195 Mo. App. 621, 187 S. W. 604. We have carefully read and considered the entire record, and fully concur in the majority opinion of the Kansas City Court of Appeals. That opinion, which we adopt as the opinion of this court, is as follows:

"E. M. Mohler, on February 2, 1921, was in the general merchandise business at Leeton, Missouri, his store consisting of a stock of

general merchandise and fixtures. On that date, Mohler gave defendant bank a chattel mortgage on said stock and fixtures to secure a note of even date, due in thirty days, for $2980. The mortgage was recorded on February 3, 1921, and provided that the property should remain in mortgagor's possession until default be made in payment of said note, but, in case of a sale or attempt to sell or remove same from the store building, 'except thru natural channels of selling merchandise,' or in case of an unreasonable depreciation in value, the bank could take said property into its possession—and then followed the usual provision for foreclosure. The chattel mortgage contained this provision immediately after the description of the note: 'Privilege is granted to Bank of Leeton to assist in taking an inventory when said bank has good reason for believing stock has been reduced to $2980.'

"Five days later, to-wit, on February 7, 1921, Mohler committed suicide.

"On February 11, 1921, his widow, Kate L. Mohler, was appointed administratrix and took possession of the stock. On February 21, 1921, the bank, by replevin, under its chattel mortgage, took said stock away from her.

"The administratrix, on March 14, 1921, under a proceeding instituted in the probate court, sold the estate's equity of redemption in said stock to George S. Moore for the sum of $25. Thereupon Moore paid $2200 to the bank and it released or dismissed its replevin suit, and delivered possession of said stock to Moore.

"Between March 21 and May 2, 1921, the fifteen creditors of Mohler, who are now plaintiffs herein, obtained allowance of their respective claims as demands against Mohler's estate.

"On May 5, 1921, and within ninety days after defendant bank took possession of said stock, the first named six of the plaintiff-creditors, to-wit, Farmers' Cooperative Company, H. D. Lee Mercantile Company, S. H. Beiler Grocery Company, National Candy Co., Mishawaka Woolen Manufacturing Company and Fred Stone, filed a bill in equity, in the nature of a creditors' bill, alleging the allowance of their demands and the giving by Mohler of the chattel mortgage to the bank and his death shortly thereafter; that his widow was appointed administratrix and went in charge, but that the bank in replevin took possession of the stock; that thereafter, without the knowledge of plaintiffs, the administratrix obtained an order for the sale of the equity of redemption and sold said equity to Moore, who then purchased said stock from the bank.

"The bill then alleged that the chattel mortgage given by Mohler to the bank provided that the property should remain in Mohler's possession until default, but that in case of sale or attempt to remove from the store building 'except through the natural channels

of selling merchandise' or an unreasonable depreciation thereof, the bank could take possession and foreclose; that within ninety days of the filing of the bill, the bank 'took possession of said stock of the value of $3500 and converted it to its own use, and the same has rendered the estate of said Mohler wholly and utterly insolvent.'

"The bill further alleged that the chattel mortgage was fraudulent and void as against creditors 'and especially as against the judgments in favor of these plaintiffs and other parties, similarly situated, who may join in this action, for the following reasons:' Because the chattel mortgage and the taking possession of said stock was in violation of the 'Bulk Sales Law, Article Six, Chapter Nineteen, Revised Statutes 1919, and particularly of the provisions of Section 2286,' in that the bank did not obtain a list of the creditors and give notice seven days before taking possession of said stock, etc.

"It further averred that the chattel mortgage was void because it failed to indicate the amount of indebtedness claimed by the bank, and was made for Mohler's benefit in that he was allowed to remain in possession and to sell and dispose of same in the usual course of business for his own use, and the bank took no steps to see that the proceeds of sale of goods were accounted for and paid in satisfaction of said indebtedness.

"The bill further alleged that plaintiffs 'bring this action for the benefit of themselves and for all other persons who, similarly situated, have unpaid claims against the estate of the said decedent, and who may join in this cause of action;' and that they have no other remedy, etc.

"Wherefore, it was prayed that the chattel mortgage be declared void, and judgment be rendered for the value of the stock and fixtures; that the court would permit other creditors similarly situated to be made parties; that after payment of costs and a reasonable attorney's fee, the balance be distributed according to the parties' respective rights as found, and for all other relief.

"On June 18, 1921, after the lapse of ninety days from the time the defendant bank took possession of said property, the other nine creditors filed their respective applications to be made parties-plaintiff along with the original six. The court, over the objections of defendant, allowed them to join in the bill.

"Afterwards, on October 23, 1921, all fifteen of the plaintiff-creditors of Mohler filed an amended petition or creditors' bill in equity, making the same allegations as before, and asking to have the chattel mortgage declared fraudulent and void because Mohler was allowed to remain in possession and to sell from said stock for his own benefit in the usual course of business, and because such 'disposition' of the stock by Mohler was in violation of the 'Bulk Sales Law,' Sections 2286 to 2290, Revised Statutes 1919. The amended bill al-

leged that plaintiffs' demands and allowances were due and unpaid and they had no other remedy, and concluded with a prayer for relief similar to that of the original bill, except that the amended bill sought distribution only of the $2200 received by the bank from Moore.

"A demurrer was filed to the amended bill, but the same was over-ruled.

"The case was tried by the chancellor on an agreed statement of facts, which includes all those facts hereinbefore set out.

"It was further admitted that at the execution of the chattel mortgage the possession of the property was not delivered to defendant, and that it put no one in charge thereof, but that 'Mohler was permitted to continue in possession thereof and to sell goods therefrom;' that it was 'orally agreed, by reason of the chattel mortgage having no blank space for writing such agreement therein, . . . that Mohler should not buy any more goods, would put on a sale, and that he would keep the receipts therefrom and bring them at the close of business each day to the defendant to be applied upon the indebtedness.' (Plaintiffs objected to the competency of this, because it varied the terms of the mortgage, but admitted the truth thereof subject to its competency).

"It was further admitted that plaintiffs were proceeding under the provisions of the Bulk Sales Law and were asking for a receiver; that all of the demands or claims of plaintiffs were for goods, wares and merchandise sold by them to Mohler, except the claim of Fred Stone, whose claim was for borrowed money; that the aggregate of the plaintiffs' claims was about $3000, and that Mohler was, and for a long time prior to the giving of the chattel mortgage had been, insolvent, and at the time of the trial his estate had been closed, and that plaintiffs were not able to identify any of the goods they had respectively sold Mohler, or to say that the goods they sold to him were remaining in the stock on the date defendant took possession of it.

"Before submitting the case, defendant objected to any evidence under the petition, because no equity was pleaded therein, because plaintiffs had an adequate remedy at law, and because of all the reasons stated in the demurrer. At the request of the attorneys, the chancellor allowed counsel on each side the sum of $150 as attorney's fees. Thereafter, the chancellor rendered a judgment or decree declaring the chattel mortgage to be null and void, and the defendant to be a receiver for the benefit of all the creditors of Mohler, including the defendant bank itself, to the extent of the $2200 received by it, less the attorney's fees and costs, and directed that the remainder of said fund be distributed to Mohler's creditors, including defendant, as follows: Defendant to retain 29/55ths and to

pay plaintiffs 26/55ths thereof pro rata according to their respective demands or allowances stated in the petition.

"The record does not disclose any demurrer to the original petition. The 'answer and objection' of defendant to the application of the additional parties to be made plaintiffs state certain matters which, if contained in a demurrer, would be grounds thereof, but that pleading was not striking at the petition. While it has been held that a motion to dismiss, going to the whole case and dispositive thereof, can be regarded as, in substance, a demurrer and hence needs no exceptions to preserve it (State ex rel. v. Ellison, 266 Mo. 423), yet we do not think a mere objection to the application of parties to be made additional parties-plaintiff can fulfill the office of a demurrer. However, the same grounds are contained in the demurrer to the amended petition, which demurrer *is* in the record, and the substance of defendant's contention is preserved thereby and remains in the case. These (so far as concerns the grounds now considered) are that the amended bill stated no cause of action either in law or in equity; that equity had no jurisdiction herein; that plaintiffs had an adequate remedy at law and the bill shows such fact on its face; and that the amended petition shows it was filed more than ninety days after defendant took possession of the stock.

"The essence of respondents' position or contention may be stated somewhat as follows:

"That under the circumstances of this case, a creditor's bill in equity is maintainable under general principles of equity aided by the authority granted by the Bulk Sales Law, including both the first and second sections thereof, and that the case is not bottomed solely and alone on the second section; that in this case all of Mohler's creditors, except the defendant, joined in the bill; that all of them before doing so, had obtained judgment in the probate court on their claims; that each had a right to have the chattel mortgage declared fraudulent; that after their claims had been reduced to judgment, they had one right in common—to have the property subjected to their claims; that a fraudulent conveyance can be set aside only at the instance of creditors; an heir or administrator cannot do so (Merry v. Fremon, 44 Mo. 518; George v. Williamson, 26 Mo. 190); nor can a purchaser at an administrator's sale (Hall v. Callahan, 66 Mo. 316); that Mohler being dead and his estate insolvent, the probate court could grant no further relief than to allow the claims, or, in other words, render judgment on them; that no execution could issue; and therefore no further proceedings at law were required to lay a foundation for equitable relief against a fraudulent grantee. [Lyons v. Murray, 95 Mo. 23, 28-29.] See also the following other cases as to the right to maintain a creditor's

bill: Pendleton v. Perkins, 49 Mo. 565; Jackman v. Robinson, 64 Mo. 289, 292; Steele v. Reid, 284 Mo. 269, 285.

"Hence respondents say that the facts herein furnish an example of how a court of equity can interpose to furnish *one remedy*, common, just and fair to all, and that no good reason exists why its power should not be applied to the situation in this case. And respondents contend, in effect, if we understand them, that they can therefore join in a creditors' bill attacking the mortgage, not only because it is fraudulent in allowing the mortgagor to remain in possession and sell in the usual course of business, but also because the mortgage was made without complying with the Bulk Sales Law as to the giving of seven days' notice, etc. Such, in brief, is the position taken by respondents. Their theory is that, under the circumstances of this case, the right to maintain a bill in equity exists under general principles of equity, just the same as the right of each creditor to sue by attachment exists at law; that the Bulk Sales Law, making the chattel mortgage fraudulent and void when its provisions are not complied with, does not grant *only* such *legal* remedies as attachment, levy of execution, etc., but that since the aforesaid law makes the chattel mortgage fraudulent and void, then *equitable* remedies are *also* open, when circumstances are such as to give rise to them; and that the right to have a fraudulent vendee declared a receiver under the second section of said Bulk Sales Law (Sec. 2287, R. S. 1919) is not confined by the proviso attached to said section to those creditors who can pick out and identify the goods in the stock which they sold to the debtor. The respondents' view is that the said second section (2287) making a fraudulent vendee a receiver applies to the entire Bulk Sales Law, to the first as well as the second sections thereof, as shown by the use of the word 'Act' in the Session Laws, 1913, page 163, and the word 'article' in the revised statutes; that the law says such vendee, on the application of any of the creditors, shall become a receiver for all of the merchandise and fixtures that come into his possession; and respondents contend that if the proviso at the end of the second section be construed as restricting the receivership to such goods only as the creditor can identify, then he is far from being a receiver for all the goods for the benefit of the creditors suing, and under such interpretation the law becomes conflicting, complicated, unworkable and worthless; that the proviso should be interpreted as merely a negative way of stating that a creditor shall have a specific individual lien only on the articles he sold and can identify, and that he can retake them without being required to allow them to go into the general fund to be distributed pro rata among all the creditors.

"The contentions of respondents, unless they are wholly without foundation, present some very interesting and novel questions; but

after considering the case in all its branches we do not find it necessary to attempt to pass on the questions hereinbefore adverted to, since we are more deeply concerned with another point made by appellant and which, if valid, strikes at the root of the entire case. And that is that the chattel mortgage herein is not such a 'sale, trade or other disposition' of the property as to come within the meaning of the Bulk Sales Law. In Vaughan v. Tyler, 206 Mo. App. 1, 4, this court, in an opinion by the author hereof, held that, under the circumstances of that case, the taking possession under a chattel mortgage was within the provisions of the Bulk Sales Law, citing Semmes v. Stecher Brewing Co., 195 Mo. App. 621. The precise point made in the case at bar was not pressed or briefed in the Vaughan case, but the question was rather whether the trial court was right in proceeding to apply the provisions of the second section of the Bulk Sales Law. However, if, the holding in the Vaughan case that a chattel mortgage given in good faith to secure a valid debt is within the purview of the Bulk Sales Law, is wrong, then the sooner the correct rule is announced the better it will be.

"In 27 Corpus Juris, 883, it is said: 'It has been almost uniformly held that a chattel mortgage of goods in bulk which operates only to secure a lien, the title remaining in the mortgagor, is not a sale, transfer, exchange, or assignment within the meaning of those terms as used in the bulk sales statutes, except where used as a mere device to effect what is in fact a sale or transfer in evasion of the statute.'

"In Hannah v. Richter Brewing Co., 149 Mich. 220, 222, the court, in construing the Michigan Bulk Sales Law, which forbade the 'sale, transfer or assignment' of stocks without certain formalities, held that the giving of a chattel mortgage was not within the meaning of that law. The court said: 'Taking this language and the other language of the act, it is apparent that its object was to regulate those sales made of an entire stock upon an immediate payment and change of possession, and which before the act might have been valid, although in fact a fraud upon creditors. To hold a chattel mortgage within the meaning of the statute it is necessary to hold that it is a sale within the common acceptation of that term, transferring the entire title, and entitling the vendee to immediate possession. This, by the specific terms of this mortgage, which are the same as those of chattel mortgages generally in this State, and under our decisions above cited, cannot be done.'

"Similar rulings are to be found in the following cases: Des Moines Packing Co. v. Uncaphor, 156 N. W. 171; Farrow v. Farrow, 206 S. W. 134; Avery v. Carter, 89 S. E. 1051; Wasserman v. McDonnell, 76 N. E. 959; Schwartz v. King Realty Co., 109 Atl. 567; Noble v. Fort Smith Grocery Co., 127 Pac. 14; McAvoy v. Jennings,

44 Wash. 79; Greenburg v. Lenz, 12 Brit. Col. 395; Mills v. Sullivan, 111 N. E. 605.

"In 12 Ruling Case Law, 526, sec. 55, it is said the test is whether the merchant in the *sale* takes 'an unusual method of disposing of his property in order to get the money for his own use, and leave his creditors unpaid,' and that the 'terms "sale, transfer or assignment," used in such acts, taken in their usual and ordinary signification, mean the disposition of the entire title of the seller. Such words are held not to be sufficiently broad to include a mortgage made in good faith.'

"It is true the words in the various statutes vary, but as stated in some of the decisions they mean practically the same thing, and the object of the statute is to prevent a merchant from *selling* or *disposing* of his *stock,* for which he owes his creditors, and, after obtaining the money therefor, putting it in his pocket and thereby defrauding them. The decisions say that the Bulk Sales Law is what its name indicates, a law against *sales, trades* or *disposals* of property and that a chattel mortgage which merely creates a *lien on* the property and not a title therein does not come within its purview. Such laws were not intended to prevent a diligent creditor from securing, or obtaining priority of payment of, a valid debt in good faith.

"It is conceded in the case at bar that the chattel mortgage was given for 'money owed the bank' and was not a mere scheme to evade the statute. While it is true that if the mortgagor were permitted to remain in charge and sell in the usual course of business for his own benefit and without accounting to the mortgagee, this would be fraudulent in law, yet the mortgage was at once recorded and the mortgagee took possession before any steps were taken by other creditors or any new creditors came into existence; and the purpose was not to obtain possession of more goods than the debt amounted to, nor was that done, but merely to enforce the bank's debt. We think that a chattel mortgage given in good faith to secure a valid debt is not within the meaning or purview of the statute, and that therefore none of the plaintiff-creditors could proceed under the Bulk Sales Law, regardless of whether nine of them were barred by the ninety-day limit of Section 2290, Revised Statutes 1919, and regardless of whether or not they, or the original six plaintiff-creditors, could join in a creditors' bill in equity, but must first invoke their legal remedies."

It follows that the contrary ruling of the St. Louis Court of Appeals in the case of Semmes v. Stecher Brewing Company, 195 Mo. App. 621, 187 S. W. 604, is overruled; likewise, the previous rulings of the Kansas City Court of Appeals in the cases of Olean Milling Co. v. Tyler, 208 Mo. App. 430, 235 S. W. 186, and Vaughan

v. Tyler, 206 Mo. App. 1, 226 S. W. 1034, and other rulings of our courts of appeal which are in conflict with the ruling in this case.

The judgment of the circuit court is accordingly reversed. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.