John STARMAN, Plaintiff-Respondent,

v.

JOHN WOLFE, INC., Defendant,

Charles E. Bradley et al., Garnishees-Appellants.

No. 34254.

Missouri Court of Appeals, St. Louis District, Division Two.

Jan. 9, 1973.

Clayton & Rosen, Charles Clayton, St. Louis, for garnishees-appellants.

Edward A. Glenn, Louisiana, for plaintiff-respondent.

SIMEONE, Judge.

This is an appeal from a judgment of the Circuit Court of Pike County entered April 19, 1971, in favor of plaintiff-respondent John Starman and against the appel-

lants Charles E. Bradley, Ernest E. Watson and Bradley-Watson Motors, Inc. (hereinafter garnishees) in the sum of $3,183.40. After the garnishees had failed to pay the money into court for the benefit of the plaintiff, judgment was entered on the ground that the garnishees were bulk transferees of John E. Wolfe, Inc. and that a transfer of merchandise was made in violation of Article 6 of Chapter 400, RSMo.[1]

On September 11, 1969, the plaintiff filed his petition against John E. Wolfe, Inc. alleging that he had ordered an automobile from Wolfe and paid to him the full purchase price. Thereafter the automobile was delivered, but unknown to him, Wolfe had wrongfully placed a lien upon it in favor of the Illinois State Bank of Quincy. The bank later notified Starman of the lien and threatened foreclosure. The petition alleged that Wolfe failed to satisfy the lien and Starman was required to pay to the bank $3,300 and costs. Starman prayed judgment in that amount against Wolfe.

Thereafter the garnishees were served with a Summons to Garnishee on Execution or Attachment and several interrogatories were propounded to each of the three garnishees. Their answers generally denied that any money was owed to Wolfe. These answers were in turn denied by the plaintiff and thereafter the garnishees replied to plaintiff's denials.

On December 15, 1969, judgment was rendered in favor of Starman and against Wolfe in the sum of $3,300 and costs. On February 17, 1971, hearing was held on the garnishment proceeding. The evidence, based on offers of the parties by stipulation, the interrogatories and many exhibits, showed that John E. Wolfe, Inc. was engaged in the business of an automobile dealership in Louisiana, Mo., and that Starman was engaged in the auto body repair business in the same locality and had done business with Wolfe. Wolfe's busi-

ness was located at 2101 West Georgia Street.

On March 11, 1969, the garnishees Bradley and Watson entered into an agreement to purchase the business of Wolfe on condition of the approval of Bradley and Watson as franchisees of General Motors Corp. The buyers agreed to pay $35,000, except that $5,000 was placed in escrow to be " . . . used by the holder to pay any unknown, or otherwise, liabilities of the seller; . . . " The agreement provided that the seller should furnish a list of existing creditors to the buyer and the amounts owing. The parties were also to prepare a schedule of the property transferred "sufficient to identify it." The agreement further provided that "At least ten (10) days before the buyers take possession of the goods or pays [sic] for them, whichever happens first, they shall give notice of the transfer personally or by registered or certified mail to all persons shown on the list of creditors furnished by the seller . . . The contents of such notice shall conform to the requirements of Section 6–107 of the Missouri Uniform Commercial Code." Pursuant and subsequent to the agreement Bradley and Watson formed a corporation in Missouri and received a certificate of authority to commence business on May 6, 1969. On May 19, 1969, notices were sent to creditors of Wolfe, including Starman, pursuant to § 400.6–107 of the Commercial Code, informing them that Wolfe, Inc. intended to make a transfer in bulk to Bradley-Watson Motors, Inc. of materials. The notice informed the creditors that the "proceeds of the transaction were not to be used to pay the debts of [Wolfe]"; the property consists of all the merchandise and inventory of Wolfe located at 2101 West Georgia, Louisiana, Missouri, and that the "transfer is for new consideration in the amount of approximately $65,000" which "is to be paid by the transferee to the transferor on May 29, 1969 at 2101 West Georgia, Louisiana, Missouri." Starman went to the address

---

1. All references are to RSMo, 1969, V.A.M.S., unless otherwise indicated.

on May 29 pursuant to the notice and inquired about the transfer. No one at the business knew anything about it and he was unable to obtain any information. Neither Bradley nor Watson was present. The garnishees' evidence indicated that they closed the contract with "John E. Wolfe, Inc. on June 4th, 1969 by a draft in the sum of $60,816.39, dated June 4th, 1969, said check being made payable to John E. Wolfe, Incorporated." This was done on June 4, 1969, in Quincy, Illinois, when Bradley, Watson, Wolfe and a representative of the Illinois State Bank met in that city.

A great deal of evidence and a large number of exhibits were introduced which tend to show that the garnishees took possession of the business prior to May 29, 1969, or June 4, 1969. Starman contends that the business was taken over by the garnishees on March 13, 1969. As evidence of this Starman introduced a great number of exhibits to show that on March 13, 1969, Bradley and Watson opened a bank account at the Bank of Louisiana in the name of Bradley-Watson Motors, Inc., and during the succeeding months a number of checks were written on the account to pay for many items, such as an electric bill owed by Wolfe, employees' salaries, taxes, tires, parts and operating expenses of the business. During the months of April and May the proceeds from parts sold were deposited in the account to the credit of Bradley-Watson Motors, Inc.

At the time of the "closing" in Quincy, Illinois, three checks were drawn: (1) a check in the amount of $60,816.39 payable to John E. Wolfe, Inc. and Illinois State Bank; (2) a check in the amount of $7,620.00 payable to Ralls County State Bank issued for the benefit of Wolfe, and (3) a check in the amount of $5,650.00 payable to Farm Supply Company for John Wolfe, Inc. and John Wolfe.

Wolfe was indebted to the Illinois State Bank in excess of $60,816.39. The garnishees offered into evidence a "financing statement" from John Wolfe to the Illinois State Bank, but there is nothing in the record to indicate the nature of the security interest held by the bank or what merchandise was covered by any such security interest.

The trial court rendered judgment in favor of Starman in the amount of $3,183.40 and costs. The trial court found that the ". . . Garnishees were bulk transferees in violation of Article 6 of Chapter 400 of the Revised Statutes of Missouri 1969, but they have commingled the goods so transferred and have sold the same and that they were thereby liable to Plaintiff, a judgment creditor of Defendant John E. Wolfe, . . ." Appeal was then taken here.

On August 11, 1972, respondent moved to dismiss the appeal for failure to comply with the Rules of Civil Procedure relating to briefs in that the appellants' brief did not comply with Rule 84.04, V.A.M.R. Earlier the respondent made a similar motion. This court, on its own motion, struck the first brief filed by appellants and gave them twenty days to file a new brief to comply with the rules. On August 9, 1972, a new brief was filed by appellants. This brief was not substantially different than the one originally filed. Therefore, respondent again moved to dismiss the appeal. It was ordered by the court that the motion be taken with the case.

In a number of recent cases appeals have been dismissed for failure to comply with the rules. Crapisi v. Crapisi, Mo. App., 485 S.W.2d 635; Hughes v. Wilson, Mo.App., 485 S.W.2d 620; Biggs v. Loida, Mo.App., 488 S.W.2d 932; Geiler v. Boyer, Mo.App., 483 S.W.2d 773.

"In view of the soon to be increased jurisdictional case load of this court, counsel are cautioned that the drastic action of dismissal of appeals may in the future be more rigidly applied. This for the reason that there will be less time to explore briefs and ascertain just what parties on

appeal contend for reversal or affirmance. Counsel should further appreciate the aid rendered to the court by good briefing, in compliance with the rules, thus expediting the disposition of cases." T—— v. T——, Mo.App., 483 S.W.2d 84, 84–85.

The words of Judge Lamm written in 1908 are still forceful today: "The rules of appellate practice in hand are simple and plain. They fill no office of mere red tape, or as a show of surface routine. To the contrary, they have substance, and carry on their face the obvious purpose to aid appellate courts in getting at the right of a cause. Hence, apparently, they bespeak the dignity arising from obedience. If they are not to be obeyed, they should be done away with once for all. A just rule, fairly interpreted and enforced, wrongs no man. Ostensibly enforced, but not, it necessarily wrongs some men viz., those who labor to obey it—the very ones it should not injure. If the rules in question stand for something and are ever to be enforced, they should be put in motion . . ." Sullivan v. Holbrook, 211 Mo. 99, 109 S.W. 668, 670. See also Ambrose v. M.F.A. Co-Operative Ass'n of St. Elizabeth, Mo., 266 S.W.2d 647.

Although appellants' brief is not a model of compliance with Rule 84.04, V.A.M.R., we believe that since this case raises questions concerning the recently enacted Uniform Commercial Code the interests of justice would be best served by a disposition of the case on the merits. Therefore, in the exercise of our discretion we will not dismiss the appeal and overrule the respondent's motion and proceed to the merits.

The garnishees contend on this appeal that the trial court erred in failing to find that: (1) the transaction was an exempt transfer under § 400.6–103(3) [2] because the consideration paid for the transfer was used entirely to pay a superior lien against the goods transferred; (2) the garnishees were subrogated to the rights of the superior lienholder, the Illinois State Bank, when all of the proceeds paid by the garnishees went to pay the superior lien, and (3) the plaintiff received notice of transfer at least ten days prior to June 4, 1969, on which date the garnishees paid for and took possession of the goods.

The garnishees also contend that the lien of the Illinois State Bank was "a duly perfected security interest of that bank to the goods, chattels, and other items of personal property of the business of John E. Wolfe, Inc." and the payment of that debt by the garnishees was a settlement of that security interest.

Respondent Starman contends that the court was correct in finding that the transfer was not an exempt transfer because the evidence is insufficient to establish what part, if any, of the property was subject to a security interest since the description of the goods contained in any such security agreement is neither in evidence nor does it conform to the provisions of § 400.9–203(1)(b),[3] and because the whole consideration was not in fact paid to the lienholder, Illinois State Bank.

 The Missouri bulk transfer statutes, §§ 400.6–101 to 400.6–111, were adopted by the general assembly in 1963, effective July 1, 1965, and superseded the bulk sales law enacted in 1913. The provisions of the Uniform Commercial Code dealing with bulk transfers do not "make any major changes in the law of Missouri." 1 Mo.Practice, § 511, p. 361. The purpose of bulk transfer statutes is to deal with

2. § 400.6–103(3), RSMo, provides in part: "The following transfers are not subject to this article: . . . (3) Transfers in settlement or realization of a lien or other security interest;".

3. The pertinent provisions of that section provide: "(1) . . . a security interest is not enforceable against the debtor or third parties unless . . . (b) the debtor has signed a security agreement which contains a description of the collateral . . ."

common forms of commercial fraud, including the situation where the merchant, owing debts, sells for a price and pockets the proceeds, leaving his creditors unpaid.[4] The whole purpose of the bulk sales or bulk transfer law is to protect a creditor of a merchant who sells or transfers to a purchaser all or a major part of his business without notice and without paying his creditors and to prevent a sale of goods in bulk until the creditors of the seller are paid.

Certain transfers are specifically exempt from the bulk transfer law. § 400.6–103 deals with those exemptions. One exemption is a transfer "in settlement or realization of a lien or other security interest; . . ."[5] § 400.6–103 deals with situations where creditors of the transferor cannot be prejudiced by a bulk sale since that section covers transfers under judicial supervision or instances where the general creditors cannot be harmed because of a specific senior security interest covering the transferred items.

The garnishees rely on Farmers' Co-op Co. v. Bank of Leeton, 319 Mo. 548, 4 S.W.2d 1068. In that case one Mohler was in the general merchandising business and gave the bank a chattel mortgage on the stock and fixtures to secure a note. After Mohler committed suicide and after his widow took possession of the stock, the bank, under its chattel mortgage, took the stock into its possession by replevin. The creditors of Mohler filed suit seeking payment of their claims, alleging a violation of the bulk sales law. Our Supreme Court held that a chattel mortgage of goods in bulk which operates to secure a lien, the title remaining in the mortgagor, is not a sale within the meaning of the bulk sales statutes. The chattel mortgage was given for money owed the bank and was not a

scheme to evade the bulk sales statute. The court concluded by saying: "We think that a chattel mortgage given in good faith to secure a valid debt is not within the meaning or purview of the statute, and that therefore none of the plaintiff-creditors could proceed under the Bulk Sales Law, . . ." *Leeton*, supra, 4 S.W.2d at 1071.

■ In *Leeton* the merchandise was covered by the chattel mortgage and the bank as holder foreclosed its mortgage and took the merchandise into its possession before selling it. That is not the situation in this case. The Illinois State Bank had not foreclosed any security interest it had nor did Wolfe deliver the merchandise *to* the security interest holder in "satisfaction" of its lien. There is no evidence that the Illinois State Bank had a right to foreclose or to demand delivery of the goods at the time of the transfer. There is no evidence that Wolfe was in default of any security agreement. To be an exempt transfer under § 400.6–103(3) the transfer should be made to the holder of the security interest and not to the transferee for the benefit of the security interest holder. When the merchandise covered by a security agreement is transferred to the holder of such agreement, the other creditors of the transferor cannot be jeopardized since that specific property is to be used to pay the holder of the security agreement.

■ For another reason this transfer from the seller Wolfe to Bradley-Watson cannot be considered an exempt transfer under the provisions of § 400.6–103(3). The garnishees contend that the consideration paid for the transfer was used *entirely* to pay the superior lien held by the bank, hence the transaction is exempt from the bulk transfer law. But the evidence indi-

4. See Official Comment, § 6–101, Uniform Commercial Code, 1972 Official Text; Discussion, 37 Am.Jur.2d, Fraudulent Conveyances, § 238; series of articles on Bulk Sales by Miller, 1954 Wash.U.L.Q.

1, 132, 283; Forgey, Bulk Transfers, 29 Mo.L.Rev. 449.

5. For all practical purposes this section carries forward the prior bulk sales law— §§ 427.010 to 427.050, RSMo, 1959.

cates that the consideration paid at the "closing" on June 4, 1969, at the Illinois State Bank consisted of several checks payable to parties other than the bank for the benefit of Wolfe. In such a posture the entire consideration did not go to pay off any security interest of the bank, so that some creditors were preferred over Starman to his detriment.

We hold that under the circumstances here the transaction was not an exempt transfer within the meaning of § 400.6–103(3).

■ The garnishees next contend that if the transaction is not an exempt transfer, they should be subrogated to the interests of the Illinois State Bank since all the proceeds paid by them "went directly to pay off that superior lien." They contend there is evidence to the effect that there was a duly perfected security interest in excess of the amount paid to the bank for Wolfe, and rely primarily on Wyman, Partridge & Co. v. Tierney, 42 Wyo. 321, 294 P. 781, 75 A.L.R. 667, and the general principle of law stated therein:

> "All of the purchase price or equivalent of the value of the property transferred to [grantees], however it be regarded, was by them, under order, paid into court and applied to the satisfaction of the judgments . . . It has been repeatedly held, on good authority and reason, that when a conveyance of property has been avoided by creditors of the grantor, it may be upheld in favor of a grantee, free from actual fraud to the extent of the actual consideration paid, and he may be subrogated to the rights of the holders of liens whose incumbrances he had paid. [citing cases.]"

*Wyman,* supra, 294 P. at 784. See also cases collected in 50 Am.Jur., Subrogation, § 82 and Annot., 80 A.L.R. 712.

While there is justification for the principle that a grantee who pays the lien against the grantor is subrogated to the rights of a lienholder and is entitled to a superior right as against other creditors, the principle is not applicable in this case for several reasons. Procedurally, the garnishees did not properly plead the issue of subrogation under the appropriate Rules of Civil Procedure. Civil Rule 90, V.A.M.R., details the procedure for raising issues in garnishment proceedings. Rule 90.18 provides that the issue or issues ". . . made up on the denial and reply shall be the sole issue or issues tried, . . ." An examination of the pleadings in this case reveals that the garnishees, in their reply to Starman's denial of the answers, stated that the transfer "fully complied with all the requirements of sections 400.-6–101 to 400.6–111 revised statutes of Missouri 1959 [sic]." The issue of subrogation was not specifically raised. It has been held that subrogation cannot be raised under a general denial. Frazier v. Atchison, T. & S. F. R. Co., 104 Mo.App. 355, 78 S.W. 679; Moore v. Mansfield, Mo., 286 S.W. 353, 354–355. This issue of subrogation was raised specifically for the first time in this court. The issue of subrogation not being raised by the denial and reply cannot be raised for the first time here. But without regard to this procedural deficiency, the record does not clearly reflect the security agreement held by the Illinois State Bank so that the garnishees could be said to be subrogated. The only evidence tending to support any security interest is a copy of a "financing statement." The financing statement does not qualify as a security agreement. American Card Company v. H. M. H. Co., 97 R.I. 59, 196 A.2d 150, 152. The financing statement states that it "Covers the Following Types (or Items) of Property: . . . All inventory and all equipment of Debtor, including but not limited to New, Used and Demonstrator Motor Vehicles, Passenger and Commercial, whether now in possession of Debtor or hereafter acquired by replacement, substitution or addition." Cf. In re Fuqua, 10th Cir., 461 F.2d 1186. The

burden is on the garnishees to show the existence and provisions of a specific security agreement. Furthermore, the whole of the consideration paid by the garnishees was not paid to the bank and if the garnishees could be considered to be subrogated to the rights of the bank to the extent of the amount paid, the remainder of the consideration paid should be available to the creditor, Starman. There is no indication in the record that the Ralls County State Bank or Farm Supply Company had any security interest on the property of Wolfe.

■■ *Wyman,* supra, is not dispositive of this case. In that case the garnishee took great pains to determine if there were creditors other than the lienholder, paid the consideration into court for the benefit of all the creditors, and the case was decided under a statute dissimilar to the present Missouri Bulk Transfer Law. Even if it can be said that the garnishees can be subrogated to the rights of the Illinois State Bank, they would be subrogated only to the rights that the bank may enforce. There is nothing in the record to indicate that the debt was due, that the bank had a right to foreclose on the property, or any other fact which shows the rights of the bank. To be subrogated to the rights of the bank means that garnishees have the same rights as the bank, no more, no less. The bank's rights under the mortgage were to foreclose and to sell the several items at public or private sale. The garnishees have not sought to exercise these rights. A secured creditor has no right to simply take possession of the security and then make its own determination that the security is of less value than the debt which it secures. Therefore, the subrogee of such creditor cannot do so.

In view of these considerations, the garnishees cannot be said, under these facts, to be subrogated to the rights of the Illinois State Bank in order to give them a superior right as against Starman.

As buyers of the Wolfe merchandise, the garnishees contend that all of the provisions of the bulk transfer law have been complied with, and therefore they are not responsible to Wolfe's creditor, Starman. They urge that they did not take possession of the property without giving a proper notice to the creditors and that the notice was consistent with and followed the requirements of §§ 400.6–105 and 400.6–107. § 400.6–105 provides:

"In addition to the requirements of [the preceding section relating to schedule of property and list of creditors] any bulk transfer subject to this article except one made by auction sale . . . is ineffective against any creditor of the transferor unless at least ten days before he takes possession of the goods or pays for them, whichever happens first, the transferee gives notice of the transfer in the manner and to the persons hereafter provided . . ."

This is the "heart" of the Article. Official Comment, Uniform Commercial Code, 1972 Official Text.

■ § 400.6–107 requires, among other things, that the notice shall also state (if the debts of the transferor are not to be paid in full) the location and general description of the property, the estimated total of the transferor's debts, and the address where the schedule of property and list of creditors may be inspected. The notice to creditors which informed the creditors that a bulk sale would take place on May 29, 1969, in Louisiana, Missouri, was mailed on May 19, 1969. There is nothing in the record to indicate when the notice was received by Starman. Presumably he did not receive the notice on the same date it was mailed. In order to satisfy the requirements of § 400.6–105 the transferee should give notice to creditors so that they receive the notice at least ten days prior to taking possession of the goods or prior to paying for them. The fact that a closing takes place at a time later than ten days

and at some different place than that specified in the notice is not a compliance with § 400.6–105. We hold that the garnishees did not fully comply with the bulk transfer law for the following reasons. § 400.6–105 requires "at least ten days" notice before the transferee takes possession of the goods or pays for them, "whichever happens first," or the bulk transfer is "ineffective." The record does not disclose that Starman received the notice at least ten days prior to the date on which the payment was to be made. Even if we consider the fact that payment of the consideration was made on June 4, 1969, the closing was held in an entirely different place and state than that which the notice indicated.

There is sufficient evidence in the record for the trial court to have reached the conclusion that judgment should be rendered for Starman. There is sufficient evidence to conclude that the garnishees took possession of the premises and goods over two months prior to June 4, 1969, the date of the "closing," and commingled the goods. The garnishees opened a checking account in their names and proceeded to write checks to pay for parts, supplies, salaries and other bills. This is substantiated by Mr. Bradley when he admitted in his deposition that one check was for electrical service ". . . to keep from getting the lights cut off *when we took over on March 13th* . . ." (Emphasis added.) § 400.6–105 requires notice to be given before taking possession *or* making payment. In either event, the garnishees failed to comply with these provisions.

Failure to comply with the requirements of the bulk transfer article renders the transfer "ineffective" and the transferee is liable to creditors to the extent of the value of the property purchased or the amount he has paid.

Since we hold that the garnishees did not fully comply with the requirements of the bulk transfer law, that the transaction was not an exempt transfer, and that under the facts here the garnishees were not

subrogated to the rights of the Illinois State Bank, the judgment of the trial court is affirmed.

SMITH, P. J., and DONALD E. DALTON, Special Judge, concur.