The **UNITED STATES SHOE CORPORATION**

v.

**CUDMORE–NEIBER SHOE COMPANY, INC., and Merlyn Pugh.**

No. CIV73–3041.

United States District Court, D. South Dakota, W. D.

Sept. 23, 1976.

Ronald D. Olinger, Pierre, S. D., for plaintiff.

Robert D. Hofer, Thomas C. Adam, Pierre, S. D., for defendants.

## MEMORANDUM OPINION

BOGUE, District Judge.

This is a diversity action now before this Court on a Motion to Dismiss filed by Defendant Cudmore-Neiber Shoe Company, Inc. While the motion is styled as one to dismiss the complaint for failure to state a claim upon which relief can be granted, matters outside the pleadings have been presented by both parties, and not excluded by the Court. Thus the Motion to Dismiss will be treated by this Court as a Motion for Summary Judgment. *Carter v. Stanton*, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972). This Court has reviewed the pleadings and discovery materials along with the briefs submitted by the parties and finds

that there is no genuine issue as to any material fact.

On June 30, 1968 Defendant Cudmore-Neiber Shoe Company, Inc. sold a business known as "The Bootery" to Defendant Merlyn Pugh. Cudmore-Neiber and Pugh executed a security agreement in conjunction with the sale. Under the security agreement the business which was the object of the sale became the collateral for an installment purchase contract. Specifically, Pugh granted Cudmore-Neiber a security interest in the business, including its inventory, accounts receivable, fixtures, furniture, air conditioner, canopy and good will. A security interest in after-acquired collateral was also granted. The security agreement specifically gave the seller, Cudmore-Neiber Shoe Company, the rights of a secured creditor under the Uniform Commercial Code upon default. These rights include the right of self-help repossession under S.D.C.L. 57–39–8. A financing statement as to the collateral in the security agreement was filed in the county of the debtor's (Pugh) residence on May 29, 1973. *Cf.* S.D.C.L. 57–38–2. A financing statement was properly filed in the Secretary of State's office June 17, 1975.

On May 29, 1973 Cudmore-Neiber retook the business from Pugh after a default. On that day, Pugh executed a release of any claims against Cudmore-Neiber which he may have under their sales and security agreement.

While Pugh was operating "The Bootery" he obtained merchandise from Plaintiff United States Shoe Company. He allegedly still owes Plaintiff in excess of $10,000.00 for some of the merchandise he acquired from the Plaintiff. Plaintiff did not obtain any security agreement from Defendant Pugh. This action is brought to recover the amount owed Plaintiff by Pugh. As to Defendant Cudmore-Neiber, Plaintiff claims that the repossession of "The Bootery" was a bulk sale and that the requirements of the Bulk Sales Act were not complied with. Plaintiff further claims that, as an unperfected secured creditor as of May 29, 1973, Cudmore-Neiber had no right to self-help repossession. Finally, Plaintiff claims that the repossession was in effect an assignment for the benefit of creditors accomplished without the double bond required by S.D.C.L. § 54–9–11.

## I. CUDMORE–NEIBER'S FAILURE TO PERFECT

█ Generally speaking, a security agreement becomes enforceable when

. . . [t]he debtor has signed a security agreement which contains a description of the collateral . . . S.D.C.L. § 57–36–3.

In this case, Pugh had, as noted above, signed an agreement which granted Cudmore-Neiber a security interest in "The Bootery" and, *inter alia*, its inventory, accounts receivable and fixtures. Value was given by Cudmore-Neiber in the extension of credit to Pugh. S.D.C.L. § 57–1–11(2). Pugh received possessory rights in the collateral. Thus the security agreement attached under S.D.C.L. § 57–36–5. Cudmore-Neiber thus became a secured creditor, although it did not perfect its security interest until May 29, 1973 at the earliest. (The May 29, 1973 filing arguably constituted perfection of Cudmore-Neiber's security interest in fixtures under S.D.C.L. § 57–38–2. The security interest in the remaining collateral was perfected with the filing of June 17, 1975 in the Secretary of State's office, although the May 29, 1973 repossession may have constituted perfection of at least some of the collateral. See S.D.C.L. § 57–37–17.) However, this Court need not, and does not, decide whether or when Cudmore-Neiber became a perfected secured creditor. Plaintiff has no claim to the status of a secured creditor, and may therefore be properly characterized as a general creditor. Thus the general question presented concerns the right of an unperfected secured creditor to repossess collateral, and the effect of such a repossession upon the rights of a general creditor.

█ S.D.C.L. § 57–36–1 provides in relevant part as follows:

Except as otherwise provided by this title a security agreement is effective ac-

cording to its terms between the parties, against purchasers of the collateral *and against creditors.* (Emphasis added.)

It should be noted at this point that the above-quoted S.D.C.L. § 57–36–1 does not draw a distinction between a perfected and an unperfected security interest. If Plaintiff is to prevail against Cudmore-Neiber on the ground that Cudmore-Neiber had not perfected its security interest, then Plaintiff must, under the above-quoted statute, point to some provision in Article 9 of the Uniform Commercial Code which would work as an exception to § 57–36–1.

■ S.D.C.L. § 57–37–1 contains several exceptions to the general rule of S.D.C.L. § 57–36–1 that an unperfected security agreement is effective as against creditors. The only exception in S.D.C.L. § 57–37–1 that is arguably relevant in this case is found in S.D.C.L. § 57–37–1(2), which gives

> [a] person who becomes a lien creditor without knowledge of the security interest and before it is perfected . . .

priority over an unperfected security interest. However, Plaintiff in this case is merely a general creditor and has not

> . . . acquired a lien on the property involved by attachment, levy or the like . . . S.D.C.L. § 57–37–3.

Contrary to Plaintiff's contention advanced at oral argument, the mere filing of the instant lawsuit does not elevate Plaintiff to the status of a lien creditor.

■ In short, Plaintiff as a general creditor cannot prevail simply because Cudmore-Neiber had not perfected its security interest. The numerous cases cited by Plaintiff in support of this theory are simply inapposite. The cases of *City of Vermillion v. Stan Houston Equipment Co.,* 341 F.Supp. 707, 712 (D.S.D.1972); *Sequoia Machinery, Inc. v. Jarrett,* 410 F.2d 1116, 1119 (9th Cir. 1969); *In re Luckenbill,* 156 F.Supp. 129 (E.D.Pa.1957) and *In re Babcock Box Co.,* 200 F.Supp. 80 (D.Mass.1961) stand for the proposition that an · unperfected secured creditor does not prevail against a Trustee in Bankruptcy who is vested with such powers as those given a lien creditor without knowledge of secured interests. *Swift &*

*Company v. Jamestown National Bank,* 426 F.2d 1099 (8th Cir. 1970) holds on the facts there that an unperfected security interest is not good as against a subsequent purchaser. Plaintiff in this case has unavoidably encountered the general rule contained in S.D.C.L. § 57–36–1 that a security interest, even though unperfected, is generally valid as against general creditors. *See Security Bank of Oregon v. Levens,* 257 Or. 630, 480 P.2d 706 (1971).

## II. THE EFFECT OF BULK SALES LAWS

Plaintiff next contends that Cudmore-Neiber's repossession was in effect a bulk sale accomplished without compliance with bulk sales requirements. Cudmore-Neiber argues that the transfer is exempt from the Bulk Sales Act under S.D.C.L. § 57–24–8, which provides:

> Transfers in settlement or realization of a lien or · other security interest are not subject to this chapter.

*See generally Annotation: Bulk Transfers,* 47 A.L.R.3d 1114, 1135.

■ A repossession effected by a secured party, whether the security interest is perfected or unperfected, is indeed generally exempt from the provisions of the Bulk Sales Law under S.D.C.L. § 57–24–8. *See State v. Eagle Petroleum Company,* 261 Iowa 58, 153 N.W.2d 115, 119–120 (1967). In this case, however, Plaintiff points to a release executed May 29, 1973 (the repossession date) by Defendant Pugh. In this document Pugh releases all claims he may have against Cudmore-Neiber arising out of the original sales transaction. The consideration for this release is purportedly the assumption by Cudmore-Neiber of certain of Pugh's tax liabilities. Plaintiff argues that since by this document Cudmore-Neiber assumed some of Pugh's tax liabilities, thereby granting a preference to some of Pugh's creditors, the repossession transaction taken in its entirety was not in fact a transfer in settlement or realization of a security interest. Plaintiff relies primarily on the case of *Starman v. John E. Wolfe, Inc.,* 490 S.W.2d 377, 12 UCC Rep.Serv. 333 (Mo.App.1973).

In *Starman* the transfer in question was accomplished when an automobile dealer sold his business. The buyers paid for the business with three checks, all made payable to, or for the benefit of, banks and creditors to which the seller was indebted. The buyers sought to protect the purchase from a Bulk Sales Law attack on the theory that the proceeds were used entirely to satisfy a superior security interest. The court held that the exemption in the Bulk Sales Act for transfers in settlement of a security interest was not applicable for three reasons: (1) there was no evidence that the seller was in default of any security agreement, (2) the buyers were not themselves secured creditors, and (3) the consideration for the purchase was paid to several other creditors, in effect giving certain creditors a preference. The court in *Starman* discussed the purpose of UCC 6–103 (identical to S.D.C.L. § 57–24–8), and drew the following conclusions:

> . . . that section covers transfers under judicial supervision or instances where the general creditors cannot be harmed because of a specific senior security interest covering the transferred items. 490 S.W.2d 377, 382, 12 UCC Rep. Serv. 333, 337.

> \* \* \* \* \* \*

> When the merchandise covered by a security agreement is transferred to the holder of such agreement, the other creditors of the transferor cannot be jeopardized since that specific property is to be used to pay the holder of the security agreement. 490 S.W.2d 377, 382, 12 UCC Rep.Serv. 333, 338.

No decision of the South Dakota Supreme Court exists which has construed S.D.C.L. § 57–24–8. *Starman* remains, however, persuasive authority for this Court in light of S.D.C.L. §§ 57–1–1(3) and 57–1–4, which declare that South Dakota enacted the Uniform Commercial Code in an effort to make commercial law uniform, and that the code is to be construed in light of this purpose. This Court has not been referred to, and its research has not disclosed, another case which deals with the effect of a release such as the one involved here on the construction of UCC 6–103 (S.D.C.L. § 57–24–8). Consequently, this Court is of the belief that the South Dakota Supreme Court would look to *Starman* for assistance in resolving a similar question.

 In this case, the fact that Pugh was in default on the security agreement he had made with Cudmore-Neiber cannot be disputed. Thus the first two defects found in *Starman* are not present here since Cudmore-Neiber was a secured creditor and repossessed the collateral itself after default. Moreover, since Cudmore-Neiber had a specific security interest in the collateral which it repossessed, general creditors such as Plaintiff cannot complain about the repossession. Cudmore-Neiber merely exercised its right under S.D.C.L. § 57–39–15 to retain the collateral in satisfaction of the debt. Since Plaintiff was merely a general creditor, it had no standing to object to Cudmore-Neiber's retention of the collateral. Under the principles laid down in *Starman*, therefore, Cudmore-Neiber's repossession was a transfer in settlement of a security interest under S.D.C.L. § 57–24–8, and therefore not subject to the Bulk Sales Act.

 Finally, Plaintiff argues that the repossession was an assignment for the benefit of creditors accomplished without the bond required by S.D.C.L. § 54–9–11. The repossession does not, either in form or substance, even approach a transfer in trust for the benefit of creditors. This argument is thus without merit.

For the foregoing reasons this Court concludes that there is no genuine issue as to any material fact and that Cudmore-Neiber is entitled to judgment as a matter of law. Accordingly, this Court will grant Cudmore-Neiber's Motion to Dismiss, treated as a Motion for Summary Judgment. Counsel for Cudmore-Neiber is hereby directed to prepare a proposed order in conformity with this opinion.

The foregoing shall constitute this Court's findings of fact and conclusions of law.