In re Donald Allen FULTON &
Carla Ann Fulton, Debtors.

COMMONWEALTH PETROLEUM
COMPANY, Plaintiff,

v.

Donald Allen FULTON & Carla
Ann Fulton, Defendants.

Bankruptcy No. 92–21063–C.
Adv. No. 93–2012–C.

United States Bankruptcy Court,
W.D. Missouri, C.D.

July 23, 1993.

Douglas M. Neeb, Nathalie C. Elliott, Smith, Gill, Fisher & Butts, Kansas City, MO, for Commonwealth Petroleum, Inc.

Jerry W. Venters, Venters, Pletz & Reed, P.C., Jefferson City, MO, for debtors/defendants.

Jack E. Brown, Columbia, MO, trustee.

Larry R. Marshall, Columbia, MO, for MFA Oil Co.

### MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

This case presents the issue of whether, a creditor may levy against property transferred in a bulk sale when the bulk sale has been conducted in violation of U.C.C. Article 6 but the proceeds of the sale have been paid to the bankruptcy trustee for the benefit of creditors.

### FACTS

Debtors operated a propane gas business under the name of Twin Lakes Propane which was a retail seller of propane gas to individuals. Plaintiff Commonwealth Petroleum, Inc. supplied propane to Debtors during the period from November, 1991, to June, 1992, and as of November 24, 1992, the date of the bankruptcy filing, Debtors owed Commonwealth $87,333.31. On October 20, 1992, Debtor concluded negotiations to sell Twin Lakes to MFA Oil Company and executed a purchase contract. MFA took possession of the assets of the business and has operated the business since that date. On November 6, 1992, MFA mailed notice to Twin Lakes' creditors informing them of the sale and that the sale was to be closed on November 20, 1992, but MFA refused to close the deal on that date. On November 24, 1992, Debtors filed their bankruptcy petition and simultaneously filed a motion for approval of the sale of assets to MFA pursuant to the October 20th purchase agreement. After an expedited hearing on the motion, this Court entered an order approving the sale of the assets of Twin Lakes Propane to MFA and ordering that the sale proceeds be paid over to the bankruptcy trustee to be held pending a determination by the Court of the validity of liens against the proceeds. Commonwealth asserted no claim against the sale proceeds in Trustee's hands.

### DISCUSSION

#### A. Article 6 Applies

■ The purpose of Article 6 is to protect a merchant's creditors in the circumstance where the creditor looks to the merchant's sale of its inventory in the regular course of its business to provide a cash flow to service the debt. Article 6 is designed to give the creditor some warning when the merchant sells a significant portion of its inventory outside of the regular operation of its business. The theory is that with such warning, the creditor may act to protect its position and decrease the chances that the merchant will sell out and abscond with or waste the proceeds of the sale. *Starman v. John Wolfe, Inc.*, 490 S.W.2d 377, 381–82 (Mo.Ct.App.1973); 2C *Uniform Laws Annotated*, Uniform Commercial Code § 6–101, Official Comment 2, at 50 (1991); 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 20–1 (3rd ed. 1988).

To carry out its relatively narrow purpose, Article 6 is made applicable to a limited class of transactions. First of all, for Article 6 to be applicable to an enterprise, the principal business of that enterprise must be "the sale of merchandise from stock." Mo.Rev.Stat. § 400.6–102(3) (1986). In addition, Article 6 defines a "bulk transfer" as "any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory of an

enterprise subject to this article." Mo.Rev. Stat. § 400.6–102(1) (1986).

■ The transfer in question was made by a retail seller of propane gas and involved substantially all of the assets of the seller's business, including inventory and equipment. MFA points out that the propane inventory on hand at the time of the sale was valued at merely $208.80 and the merchandise inventory was valued at $1,229.45. These items add up to about 1.3% of the total purchase price of $117,-500.00. The principle asset transferred in the sale was the equipment of the business consisting primarily of customer storage tanks. Also transferred were trucks, office equipment, a large propane storage tank, and related equipment. These items were valued at $116,054.54. MFA argues that the transaction under consideration here is not really a bulk sale because the inventory items sold were such an insignificant part of the transaction.

■ The Court, however, finds no language in the statute nor evidence from the Official Comments to the UCC that lend support to MFA's assertion. MFA's position implies that a third condition, which must be satisfied before Article 6 may be applied to a transaction, is that inventory items must be a significant part of the subject of the sale. But, the focus of the statute is squarely upon the ratio of inventory sold to inventory total. The only question to be resolved surrounding the significance of a sale of inventory is the percentage of the inventory sold to the total inventory of the business and not to other items sold. Mo.Rev.Stat. § 400.6–102(3) (1986). Here, 100% of business' inventory was sold. The unambiguous wording of Article 6 makes it clear that the sale of 100% of Debtor's inventory to MFA was a bulk transfer as that term is defined by the statute and that the transaction is of the type which comes under the purview of Article 6.

Moreover, where there is a bulk sale of inventory, equipment sold at the same time may become part of the bulk sale. The statute provides that "[a] transfer of a substantial part of the equipment ... [of] an enterprise is a bulk transfer if it is made in connection with a bulk transfer of inventory, but not otherwise." Mo.Rev.Stat. § 400.6–102(2) (1986). In this case, it is unnecessary to inquire into the meaning of "a substantial part" since all of the business' equipment was sold along with the inventory. Thus, not only the sale of inventory, but also the sale of equipment comes under Article 6.

### B. The Transaction Violated Article 6

■ Where Article 6 is applicable to a transaction, it places a burden upon the buyer to give notice to the seller's creditors so that they may act to protect their interests prior to the sale. Section 400.6–105 provides that a bulk transfer subject to the Article "is ineffective against any creditor of the transferor unless at least ten days before he takes possession of the goods or pays for them, *whichever happens first,* the transferee gives notice of the transfer in the manner and to the persons" provided for under § 400.6–107. Mo.Rev.Stat. § 400.6–105 (1986) (emphasis added). The parties do not dispute that MFA took possession of the assets on October 20, 1992, the date that the purchase agreement was executed. Nor is there any claim on behalf of MFA that they had sent out a notice conforming to the statutory requirements at least 10 days prior to taking possession. The Court concludes, therefore, that the sale of the Twin Lakes assets from Debtors to MFA was done in violation of Missouri's bulk transfers statute.

### C. The Remedy

The remedy specified by Missouri's bulk transfers statute is that the transfer "is ineffective against any creditor of the transferor." Mo.Rev.Stat. § 400.6–105 (1986). In the typical case, that means that the rights which the creditor had to levy against the property in the hands of seller are not lost when the transfer takes place. The creditor then has the right to employ process to reach the property in the hands of the transferee. *See Bill Voorhees Co. Inc. v. R & S Camper Sales*, 605 F.2d 888, 891 (5th Cir.1979) ("In essence, the trans-

**459**

feree is treated like a trustee who must account for the bulk property or be held accountable for the proceeds of its sale.").

This case is unique, however, because proceeds of the asset sale were paid to the bankruptcy trustee to be held specifically to satisfy the claims of creditors having interests in that property. This case presents the unusual circumstance that proceeds exist which are directly traceable to the purchase of Debtor's assets, and have been preserved by the bankruptcy trustee for the benefit of the bulk seller's creditors.

■ Article 6 is a remedial statute; it is not punitive in nature. *See Johnson v. Mid States Screw & Bolt Co.*, 733 F.2d 1535, 1537 (11th Cir.1984) ("The Bulk Sales Act is *not punitive in nature."); National Bank of Texas v. West Texas Wholesale Supply Co. (In re McBee)*, 714 F.2d 1316, 1328 (5th Cir.1983) (there is a "remedial purpose behind Article 6"). Certainly, Article 6 contemplates that there will be situations where the bulk purchaser is in fact penalized for its noncompliance by having to pay twice for the goods. But only when that result is necessary to make the bulk seller's creditors whole. No justification exists to make a creditor better off by operation of the statute than it would have been if it had received proper notice and exercised its rights against the assets before the sale. When a fund of proceeds from a bulk sale is preserved for the benefit of creditors, they should look to this fund for satisfaction of their claims.

In *Stone's Pharmacy v. Pharmacy Accounting Management*, 812 F.2d 1063 (8th Cir.1987), the Eighth Circuit remanded a case back to the district court to resolve factual issues concerning the application of Article 6. The musings of the court in its remand opinion are instructive:

This case is perplexing in that we think the defendants might be subject to the proscriptions of the Bulk Transfers Act, but on the other hand it is difficult to perceive how the plaintiff can benefit if the strictures of the Act are applied. If the Act does apply, the district court should also require Stone's Pharmacy to show how it was damaged. We question whether Stone's Pharmacy was prejudiced by FoxMeyer's noncompliance. Stone's Pharmacy would not have been placed in a better position had it been given notice. It is true that a noncomplying transferee's liability is that of a receiver who is bound to see that the transferred property *or its value* is applied to the satisfaction of the creditors' claims. *Anderson & Clayton Co. v. Earnest*, 610 S.W.2d 846, 848 (Tex.Ct. App.1980). Yet, any pretransfer security interest survives a noncomplying transfer. *In re McBee*, 714 F.2d 1316, 1328 (5th Cir.1983). InterFirst Bank held a security interest in substantially all of PAM's assets and inventory. All the proceeds of the transfer went to InterFirst and did not extinguish the debt. Stone's Pharmacy has not demonstrated how its unsecured claim would have been superior to InterFirst's claim.

*Stone's Pharmacy*, 812 F.2d at 1067 (emphasis added).

■ It is apparent that the 8th Circuit views the remedy under Article 6 to require demonstrable harm to the creditor involved. Where there is an identifiable and preserved res of proceeds from the bulk sale, and the non-notified creditor has access to that res, then the creditor has suffered no harm from the lack of notice. In this case, such a pool of proceeds exists and is administered by the bankruptcy trustee for the benefit of unsecured creditors. Thus, Commonwealth must look to that fund by filing a claim in Debtor's bankruptcy proceeding.

This is exactly the result that would have obtained even if Commonwealth had received proper notice under Article 6. If Commonwealth had taken action because of such notice and received some payment on their debt, the intervening bankruptcy filing would have made that payment vulnerable to preference attack by the bankruptcy trustee. *See e.g. Young v. Nadelson Displays, Inc. (In re Lucasa International, Ltd.)*, 14 B.R. 980 (Bankr.S.D.N.Y. 1981) (where the bulk sale purchaser, at

the sale, made remittance to the sheriff in execution of a creditor's judgement against the debtor/bulk seller, and the execution took place within 90 days of bankruptcy, it was an avoidable preference.) Thus, Article 6 and the Bankruptcy Code meld to require Commonwealth to look to the bankruptcy process for satisfaction of their claim. Under the circumstances, Commonwealth cannot complain that MFA's noncompliance with Article 6 has caused them any harm. If they receive less than the full amount of their claim, that is a consequence of their status as unsecured creditor, not of MFA's failure to give proper notice under Article 6.

## CONCLUSION

Count I of Commonwealth's complaint in this adversary action has previously been ruled. Count II of Commonwealth's Complaint herein asked this Court for a declaratory judgment that Debtor's sale of assets to MFA violated Missouri's Bulk Sales Act. In accord with the above discussion, the relief prayed for in Count II of the complaint is GRANTED to the extent of this Court's declaration that the subject sale of assets violated the Missouri's Bulk Sales Act. However, because the proceeds of the sale were paid to the bankruptcy trustee for the benefit of the creditors, no lien shall encumber the assets in the hands of MFA. Further, Count III of the Complaint is DENIED and Count IV of the Complaint is DENIED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.