AMERICAN METAL FINISHERS, INC., Respondent, v HARRY PALLESCHI, Appellant, et al., Respondent.

Second Department, February 2, 1977

*Anthony R. DiGennaro* for appellant.

*Jerome T. Dorfman* for respondent.

MARTUSCELLO, J. The principal issue on this appeal is whether a transfer of business assets by a debtor to a designee of its secured creditor constitutes a transfer "in settlement or realization of a lien or other security interest" which is excepted from the general requirements of article 6 of the Uniform Commercial Code (Bulk Transfers) pursuant to subdivision (3) of section 6-103 of the Uniform Commercial Code. We conclude that it does and we therefore affirm the order of the Appellate Term.

Respondent Harry Palleschi, as landlord, commenced a summary proceeding against his tenant, Crown-Bestell, Inc. (Crown) to recover possession of a warehouse located in West Babylon, upon Crown's default in payment of rent therefor, and for a judgment in the amount of the unpaid rent, together with attorney's fees.

On February 5, 1974, a default judgment was entered

against Crown in the amount of $3,920, and a warrant of eviction was issued. On February 8, 1974, that warrant and an execution were sent to the Sheriff of Suffolk County. Previously, on December 26, 1973, Skyway Container Corp. (Skyway) had obtained a judgment against Crown in the amount of $1,782.40. On January 21, 1974 Skyway delivered an execution to levy to the Sheriff.

On March 22, 1974 the Sheriff levied upon the personal property located in the afore-mentioned warehouse and posted a notice which scheduled a sale of the property for April 2, 1974. Priority in the proceeds was to be accorded to Skyway because of its earlier delivery of execution.

On April 1, 1974, petitioner, American Metal Finishers, Inc. (American) instituted this special proceeding to vacate the executions and to obtain possession of the personal property in the warehouse. Petitioner claimed ownership free from the liens of the above-mentioned judgment executions based on the following circumstances:

By "Bill of Sale and Agreement" dated February 28, 1974 (22 days before the levy), Crown transferred all of its personal property, fixtures, work in progress, customer lists, pending orders, accounts receivable and trade-mark to American in return for American's assumption of a loan obligation to Chase Manhattan Bank (Chase) in the sum of $205,735.38, past due wages, payroll taxes owed to the Internal Revenue Service and indebtednesses to public utilities.

The indebtedness to Chase had been covered by security interests to Chase in all of Crown's personal property (and the proceeds and products thereof), which had been perfected on July 12 and September 4, 1973. The nonpayment of payroll taxes had resulted in the placement by the Internal Revenue Service of a lien on Crown's property in the sum of $41,603.49 and in the padlocking of the warehouse and Crown's manufacturing facility.

On Crown's transfer to American, Chase delivered a release of the $205,735.38 bank indebtedness to Crown. (This was based on Chase's receipt of a note from American and a security interest in American's assets.) In connection with American's assumption of the tax indebtedness of $41,603.49, American made a down payment of $10,452.82 to the Internal Revenue Service. Included among American's moving papers herein is an affidavit by an officer of the Internal Revenue Service to the effect that such assumption and part payment

were in partial satisfaction of the tax lien, in consideration of which its levy and seizure of Crown's property were released by the Internal Revenue Service.

The judgment creditor, Palleschi, claims that the transfer from Crown to American was not in the ordinary course of business and constituted a "bulk transfer" which was ineffective against him because of nonreceipt of required notice (Uniform Commercial Code, § 6-105).

American claims that section 6-103 of the Uniform Commercial Code applies and that notice to creditors is therefore not required. That section states that "[t]he following transfers are not subject to this Article * * * (3) [t]ransfers in settlement or realization of a lien or other security interests".

Palleschi argues that the "transfer in settlement" herein was not of the kind contemplated by section 6-103 because it was not made to the secured party (the bank) but to a third party (American), and that the latter's arrangements with the bank (including the assumption of the indebtedness), which resulted in the bank's delivery of a release to the debtor, are irrelevant (citing as authority therefor *Starman v John Wolfe, Inc.,* 490 SW2d 377 [Mo, 1973]).

The chief rationale of the Bulk Transfers article is the avoidance of the "major bulk sales risk" of "[t]he merchant, owing debts, who sells out his stock in trade * * * pockets the proceeds, and disappears leaving his creditors unpaid" (Official Comment, McKinney's Cons Laws of NY, Book 62½, Uniform Commercial Code, § 6-101, p 717). But where the transfer is in settlement of a lien or security interest, there are not cash proceeds with which the seller could abscond. Thus, where the consideration is settlement of an indebtedness with no receipt of cash proceeds, the protective purposes of the Bulk Transfers article do not apply.

We see no reason to read subdivision (3) of section 6-103 of the Uniform Commercial Code so restrictively as to add a requirement that the transferee must be the holder of the security interest, thus ruling out transfer to one who in good faith takes over the position of the security holder. The interposition of such new party is not that of an officious volunteer; it serves a socially beneficial purpose of avoidance of foreclosure, with its concomitant hardships to creditors, employees and the commercial community.

Here there was no prejudice to anyone. Crown's creditors could have made no valid objection if Chase had taken back

the encumbered property in satisfaction of the indebtedness and then transferred the property to American. Instead, the transfer was made directly to American and Chase gave a separate release of its claims against Crown. The secured creditor, by reason of its own arrangement with American, simply directed the debtor to transfer the collateral to American in return for a release of its indebtedness. There was nothing suspect about this; there was no invidious reason for using the mechanism of one transfer rather than two.

The case of *Starman v John Wolfe, Inc.* (490 SW2d 377, *supra)* is to be distinguished. In that case the consideration paid for the bulk transfer was not used entirely to pay the superior lien held by the bank, but was used in part to pay other parties for the benefit of the transferor, resulting in a preference to some creditors.

The further contention that the transfer was fraudulent clearly cannot be sustained on the evidence and because an antecedent debt is a fair and adequate consideration (see Debtor and Creditor Law, § 272, subd a).

HOPKINS, Acting P. J., COHALAN, DAMIANI and SHAPIRO, JJ., concur.

Order of the Appellate Term of the Supreme Court for the Ninth and Tenth Judicial Districts, dated December 5, 1975, affirmed, without costs or disbursements.