**TECHSONIC INDUSTRIES, INC.,**
Plaintiff-Appellant,

v.

**BARNEY'S BASSIN' SHOP,**
**INC., Defendant,**

and

**David and Linda Jadwin, d/b/a Ozark**
**Sport & Hobby Center,**
**Garnishees-Respondents.**

No. 11904.

Missouri Court of Appeals,
Southern District,
Division Two.

July 31, 1981.

Motion for Rehearing and for Transfer
Denied Aug. 24, 1981.

Application to Transfer Denied
Oct. 13, 1981.

---

Charles F. Kiefer, Jr., Daniel, Clampett, Rittershouse, Dalton & Powell, Springfield, for plaintiff-appellant.

Gary W. Allman, Cantwell, Allman & Smith, Branson, for garnishees-respondents.

PREWITT, Presiding Judge.

Plaintiff received a monetary judgment against defendant. Thereafter plaintiff sought a judgment against garnishees or the right to levy execution upon certain goods garnishees had in their possession, claiming that defendant had transferred inventory to garnishees in violation of the Uniform Commercial Code—Bulk Transfers, § 400.6–101 to 111, RSMo 1978. Summary judgment was entered in favor of garnishees.

Garnishees admit that they bought defendant's inventory and that no attempt was made to comply with the bulk transfers law. They contend that under § 400.6–103(c), RSMo 1978, the transfer was exempt because it was "in settlement . . . of a lien". Defendant owed Empire Bank approximately $83,400 on a promissory note, the payment of which was secured by a security agreement covering defendant's inventory. Plaintiff sold goods on open account to defendant from December 29, 1978, through April 17, 1979, and received a judgment against defendant on September 18, 1979. On July 17, 1979, defendant and garnishees reached an agreement concerning the sale of the inventory to garnishees for $80,000 if the price was "favorable with the bank" and if garnishees were able to borrow $60,-000. Garnishees on that date received a bill of sale and the keys to the buildings in which the inventory was located. They removed part of the inventory that night. Empire Bank was not involved in the negotiations with garnishees, but defendant's president contacted the bank to see if the sale was "agreeable with them." At that time the bank was "fixing to" repossess the inventory but had not done so yet. The bank had called the note due because of defendant's failure to make a payment. Defendant's president testified by deposition that the sale to garnishees was made because of "pressure by the bank".

On July 18, 1979, defendant's president and garnishees met at the Empire Bank with an officer of that bank. Garnishees borrowed $60,000 from the bank on the inventory and the bank issued a cashier's check payable to it "in favor of Barney's Bassin" in the amount of $60,000. The bank applied the check as a payment on defendant's note. Garnishees also gave their check to defendant and endorsed to defendant a check payable to them. These checks totaled $20,000 and were endorsed by defendant and given to the bank to

apply on defendant's note. At the meeting defendant issued its corporate check for $2,800 to the bank and defendant's president wrote his personal check for slightly more than $600 to pay off the note. Defendant's corporate officers had personally guaranteed the bank's loan to defendant. The note and security agreement obligating defendant to the bank was cancelled and a new note for $60,000 and a security agreement was made by garnishees to the bank.

Plaintiff contends, quoting from *Starman v. John Wolfe, Inc.*, 490 S.W.2d 377, 382 (Mo.App.1973), that to "be an exempt transfer under § 400.6–103(3) the transfer should be made to the holder of the security interest and not to the transferee for the benefit of the secured holder." The quoted language does appear favorable to plaintiff but the facts in *Starman* are significantly different from those here. In the same paragraph as that quote the opinion states that there was no evidence that the debtor was in default under any security agreement nor that the secured party had a right to foreclose or demand delivery of the goods at the time of the transfer. Here there was a default in the agreement and the bank had a right to possession and was preparing to foreclose and seize the inventory. The sale was subject to the approval of the bank and all proceeds went to the bank. In *Starman* the bank did not receive the entire consideration "so that some creditors were preferred over Starman to his detriment." 490 S.W.2d at 383.

The wording of § 400.6–103(3) does not require that the transfer be made to the holder of the security interest. We agree with *American Metal Finishers, Inc. v. Palleschi*, 55 A.D.2d 499, 391 N.Y.S.2d 170 (1977), that we should not add a requirement that the transferee must be the holder of the security interest. As that case stated, if there was a transfer to the security holder and the security holder then sold the goods, the creditors could not complain and there is no reason to require two transac-

tions rather than one when the transaction was made with the approval of the secured party and to satisfy the lien. We hold that the transfer here is exempt and because of the difference in facts, do not believe that this result conflicts with the *Starman* holding.

The judgment is affirmed.

HOGAN and BILLINGS, JJ., concur.

MAUS, C. J., dissents and files dissenting opinion.

MAUS, Chief Judge (dissenting).

I must respectfully dissent. The subsection in question exempts from the applicability of Article 6 "[t]ransfers in settlement or realization of a lien or other security interest." § 400.6–103(3), RSMo 1978. The Uniform Commercial Code does not specifically define the terms "settlement" or "realization". Presumably there is a distinction. The terms "transfer in settlement" appropriately refer to a secured party's election to accept the collateral in discharge of the secured obligation under § 400.9–505. The terms "transfer in realization" appropriately refer to a transfer by a secured party in foreclosure of a security interest under § 400.9–504. In this case the collateral was transferred to a third party for a sale price that only partially satisfied the secured obligation. If the transfer is exempt from Article 6, it is because it was a transfer in realization of a security interest or the equivalent thereof.

A debtor's transfer of collateral to a third party should not be exempt from Article 6 merely because the purchase price is applied upon the secured obligation. The basis of this dissenting opinion can be more readily visualized by making two assumptions and posing one question. First, assume the reasonable value of the transferred property if disposed of in a "commercially reasonable" manner, § 400.9–504, was $120,000.[1] Second, assume the debtor in panic, because of personal desires or plans requiring haste,

---

1. In his deposition Mr. Jadwin testified the wholesale value of the collateral was $53,-584.55. Plaintiff's Exhibit 1, p. 15. On July 18, 1979, the day of their application the bank loaned garnishees $60,000.00 with the collateral as security.

or for some other reasons, but in good faith, sold the collateral to the garnishees for $80,000.[2] Are the unsecured creditors of the debtor to be without remedy? If the transfer is exempt under § 400.6–103, those unsecured creditors cannot look to the garnishees because they bought a bargain.

The basic purpose of Article 6 is to provide some measure of protection to the unsecured creditors of a bulk transferor. The expressed intent is not only to guard against an absconding bulk transferor, but also to guard against a bulk transfer for an inadequate price. "Having such notice, they can investigate the price and other circumstances of the sale before it occurs, and determine then instead of later whether they should try to stop it." 2A U.L.A.– U.C.C. § 6–101, Official Comment, p. 282.[3] The purpose of Article 6 must be considered in construing § 400.6–103(3). "This chapter shall be liberally construed and applied to promote its underlying purposes and policies." § 400.1–102(1).

In such construction it must also be noted that the exceptions created by § 400.6–103 are applicable only where there is some independent (other than by the transferor) assurance of a reasonable price or the interests of unsecured creditors are otherwise recognized. For example, a sale by a public officer under judicial process, § 400.6–103(4), or a transfer to a person who as-

sumes the debts of the transferor as provided in § 400.6–103(6). To conform to the intent of Article 6 and the general scheme of § 400.6–103, a transfer in realization of a security interest should be exempt only if it provides some measure of independent assurance of a reasonable price. If a secured party realizes upon a security interest by a foreclosure sale, he must do so in a manner that is "commercially reasonable". § 400.9–504.[4] This requires a reasonable price. 69 Am.Jur.2d Secured Transactions § 650. If a secured party fails to meet this requirement, the secured party is accountable to the debtor and indirectly to his unsecured creditors. § 400.9–504 and § 400.9–507.[5]

However, form should not prevail over substance. The transfer in questions should be exempt if the bank participated in the sale to such a degree that it was the equivalent of a foreclosure sale so as to cause the bank to be subject to the accountability of a secured party.[6] The evidentiary material before the court when it sustained the garnishee's motion for summary judgment did not by "unassailable proof" establish that to be true within the meaning of V.A.M.R. Civil Rule 74.04. In the event such participation is not established there will remain for determination the extent of the liability of the garnishees. This liability could possibly be limited by their subrogation to the position of the bank, 73 Am.Jur.2d Subroga-

2. The only efforts toward a sale of the assets in question shown by the record were initiated on an undisclosed date by an employee of Barney's. Mr. Jadwin met with the debtor's corporate officers on July 17, 1979, and an agreement was reached. The transaction was consummated on July 18, 1979. The record establishes the shareholder-officers of the closely held corporate debtor personally guaranteed the payment of the indebtedness to the bank.

3. By way of comparison: "If it is established that the secured party is not proceeding in accordance with the provisions of this part disposition may be ordered or restrained on appropriate terms and conditions." § 400.9–507(1).

4. In this case the court is not called upon to determine if under any circumstances unsecured creditors may object to a secured party's retention of collateral under § 400.9–505.

5. "In the case where he proceeds, or is about to proceed, in a contrary manner, it is vital both to the debtor and other creditors to provide a remedy for the failure to comply with the statutory duty. This remedy will be of particular importance when it is applied prospectively before the unreasonable disposition has been concluded." § 400.9–507, Uniform Commercial Code Comment, p. 388. "Moreover, the secured party may also be held liable to any transferee of the debtor, including the holder of a lien, a receiver, trustee in bankruptcy or representative of creditors, or executor, administrator, or person in like capacity." 69 Am. Jur.2d Secured Transactions § 649, p. 562.

6. Subsection 400.6–103(1) and (3) have been referred to as "exempting the granting and foreclosing of security interests". Hawkland, The Trouble with Article 6 of the UCC, 82 Com.L.J. 113 (1977).

tion § 79, or to placing the plaintiff in as good a position as if the garnishees had complied with Article 6, see § 400.1–106. I would reverse the summary judgment and remand the case for further proceedings.