**Mark D. HIXSON, Kamal Shuja, James M. Cullen and Raymond Blair, Appellants,**

v.

**PRIDE OF TEXAS DISTRIBUTING CO., INC., Appellee.**

No. 2–84–041–CV.

Court of Appeals of Texas, Fort Worth.

Jan. 16, 1985.

Bishop, Payne, Lamsens & Brown and Richard M. Mosher, Fort Worth, for appellants.

Hill, Heard, Oneal, Gilstrap & Goetz and Frank Gilstrap and John L. Robinson, Arlington, for appellee.

Before HUGHES, JOE SPURLOCK, II and HILL, JJ.

## OPINION

HILL, Justice.

Suit was brought by Pride of Texas Distributing Company, Inc., appellee, against A to Z Grocery, Inc., for an unpaid bill for gasoline. Pride of Texas also sought recovery from appellants Mark D. Hixson, Kamal Shuja, and James M. Cullen, who are the directors, officers, and stockholders of A to Z Grocery, Inc., and from appellant Raymond Blair, who purchased the assets of the corporation from Hixson, Shuja and Cullen. Pride of Texas recovered a judgment against all defendants, and all except A to Z Grocery, Inc. have appealed.

We affirm.

Appellee is an unsecured creditor of A to Z Grocery, Inc. Appellee sued to recover $6,466.13 owed by the corporation for gasoline delivered to it on an open account. Appellee additionally sued Hixson, Shuja and Cullen individually, seeking recovery on three alternate theories: 1) alter ego; 2) trust fund; and 3) the denuding of corporate assets. Appellee also sued Blair, the purchaser of the corporation's assets, for: 1) fraudulent conveyance; and 2) violation of the Texas Bulk Transfer Act.

The case was tried before a jury and appellee obtained favorable findings to the special issues submitted. The trial court thereupon rendered judgment against A to Z Grocery, Inc. and appellants Hixson, Shuja and Cullen, jointly and severally, for actual damages in the amount of $6,466.13, and attorneys' fees in the amount of: $2,500 for work performed at the trial level, $2,000 if an appeal is filed with the Court of Appeals, and $2,000 if an application for writ of error is filed, but not granted, by the Supreme Court of Texas. Additionally, the sale of the corporation's assets to appellant Blair was set aside, and he was appointed receiver with instructions to account for and sell these assets.

By points of error one through three, appellants complain of the wording of Special Issue No. 1 which dealt with piercing the corporate veil. The issue states:

SPECIAL ISSUE NO. 1

Do you find, from a preponderance of the evidence, that Defendants Hixson, Shuja, and Cullen used the corporation A to Z Grocery, Inc., as a sham or as their alter ego to avoid personal liability or to justify a wrong or to achieve an inequitable result or to evade an existing obligation.

Answer "We do" or "We do not."

ANSWER: *We do.*

Specifically, appellants contend that at the time of trial there did not exist a disputed material *fact* issue regarding the alter ego theory; therefore, appellants reason, the issue of whether to disregard the corporation was a question of *law* for the court, and Special Issue No. 1 should not have been submitted. Appellants additionally assert that the special issue poses an incorrect legal standard for piercing the corporate veil inasmuch as it does not require a finding of fraud or bad faith in the initial incorporation of the business, or in its management. Lastly, appellants urge that there was either no evidence to support the jury's answer to this issue, or that the answer is so against the great weight and preponderance of the evidence as to be clearly unjust.

In seeking personal liability against Hixson, Shuja, and Cullen, appellee was relying on the trust fund theory (Special Issue

No. 8)[1] and the denuding of corporate assets theory (Special Issue No. 2)[2], in addition to the alter ego theory. These theories are separate and distinct causes of action.

■ Where a judgment may rest upon more than one ground, the party aggrieved must assign error to each such ground, or he has waived his right to complain of the ruling to which no error was assigned. *Bailey v. Rogers*, 631 S.W.2d 784, 786 (Tex. App.—Austin, 1982, no writ); *Jones v. Austin Co.*, 531 S.W.2d 377, 380 (Tex.Civ.App. —Austin 1975, writ ref'd n.r.e.). *See also Gillett v. Achterberg*, 159 Tex. 591, 325 S.W.2d 384, 385 (1959).

■ The trust fund theory was recognized in Texas in the Supreme Court case of *Lyons-Thomas Hardware Co. v. Perry Stove Manuf'g Co.*, 86 Tex. 143, 24 S.W. 16 (1893). The theory was well set out in the case of *Fagan v. La Gloria Oil and Gas Company*, 494 S.W.2d 624 (Tex.Civ.App.— Houston [14th Dist.] 1973, no writ):

> [W]hen a corporation (1) becomes insolvent and (2) ceases doing business, then the assets of the corporation become a trust fund for the benefit, primarily, of its creditors. The officers and directors hold the corporate assets in trust for the corporate creditors. They are placed in the fiduciary relation to and owe a fiduciary duty to the creditors. That duty obliges them to administer the corporate assets for the benefit of the creditors and to ratably distribute them. The breach of that duty gives rise to a cause of action against the officers and directors which can be prosecuted directly by the creditors.

*Id.* at 628. The liability is limited to the extent of the value of the corporate assets received by all the directors. *Henry I.*

1. SPECIAL ISSUE NO. 8

Do you find, from a preponderance of the evidence, that at the time of the sale to Raymond Blair that the corporation had become insolvent and had ceased doing business in good faith?
Answer "We do" or "We do not."
ANSWER: *We do.*

2. SPECIAL ISSUE NO. 2

*Siegel Co., Inc. v. Holliday*, 663 S.W.2d 824 (Tex.1984).

The denuding of corporate assets theory is recognized in Texas in the case of *World Broadcasting System, Inc. v. Bass*, 160 Tex. 261, 328 S.W.2d 863 (1959). In that case, Bass and Mrs. McPheron, sole stockholders of a Delaware corporation, sold their stock in the corporation to Miller, or to a Texas corporation to be formed by him. Miller paid them with cash and gave them a note secured by the assets of the Delaware corporation and the stock of the new Texas corporation. The Texas corporation was formed, the stock and assets of the Delaware corporation were transferred to it, the Delaware corporation was dissolved, and Bass and McPheron were paid as secured creditors of the dissolved Delaware corporation. An unpaid creditor of the Delaware corporation brought suit against Bass and McPheron individually, and the Texas Supreme Court upheld a judgment against them, opining:

> The corporation was stripped of its property as completely and effectively as if it had been dissolved and its assets appropriated by respondents. Respondents obtained benefits and advantages that would have been theirs if they had actually sold such assets to the new corporation. Although purporting to be a simple sale of capital stock, the transaction was in legal contemplation the equivalent of a disposition of the corporate assets. Respondents thereby became personally liable for the outstanding debts of the Delaware corporation to the extent of its assets thus appropriated by them.

*Id.* 328 S.W.2d at 866.

Appellants present no point of error which relates to either of these alternate theories.

Do you find, from a preponderance of the evidence, that, as a result of the sale to Raymond Blair, all or substantially all of the assets of A to Z Grocery, Inc., were disposed of to the advantage of or for the benefit of Defendants Hixson, Shuja, or Cullen, and that as a result the corporation was rendered incapable of paying its debts?
Answer "We do" or "We do not."
ANSWER: *We do.*

■ We hold that the judgment of Pride of Texas as to Hixson, Shuja, and Cullen must be affirmed because by failing to assign error to the judgment with regard to the trust fund theory or the denuding of corporate assets theory, appellants have waived their right to complain of the judgment on appeal. *See Jones*, 531 S.W.2d at 380. Accordingly, we find it unnecessary to address appellants' contentions with regard to Special Issue No. 1, which dealt with the alter ego theory of recovery.

In point of error four appellants contend that the jury's answer to Special Issue No. 7 is immaterial or inapplicable to the facts of this case as a matter of law. Alternatively, appellants contend in point of error five that there is no evidence to support the jury's verdict, or that the jury's answer is so against the great weight and preponderance of the evidence as to be clearly unjust.

Special Issue No. 7 stated:

Do you find, from a preponderance of the evidence, that Defendant Raymond D. Blair failed to give notice of the intended bulk transfer to the creditors of Defendant A to Z Grocery, Inc., at least 10 days before he took possession of the goods?

Answer "We do" or "We do not."
ANSWER: *We do.*

Some further background information regarding the subject transaction is necessary at this point so as to fully comprehend the nature of appellants' contentions. The pertinent facts are that appellants Hixson, Cullen and Shuja agreed to sell the assets of the Fort Worth store of A to Z Grocery, Inc. to appellant Blair, who took possession and began operations in the store no later than December 3, 1982. Subsequently, on December 8, 1982, appellants attempted to comply with the Texas Bulk Transfer Act, TEX.BUS. & COM.CODE ANN. ch. 6 (Vernon 1968), and sent a "Notice of Intended Bulk Transfer" to the creditors of A to Z Grocery, Inc. On December 15, 1982, an "Amended Notice of Intended Bulk Transfer" was sent by appellants to the corporation's creditors. The sale to Blair was completed on December 27, 1982 when he paid a total consideration of $34,500 in two checks, made payable to two creditors who held security interests in the assets being transferred: InterFirst Bank Irving and First City Bank Central Arlington, N.A. Appellee was listed on the notices of bulk transfer as one of the corporation's unsecured creditors, but appellee's claim for $6,466.13 was not satisfied at the closing. The instant lawsuit ensued wherein appellee claimed, among other things, that the transfer of the corporation's assets to Blair was void in that the parties did not properly comply with the notice provisions of the Texas Bulk Transfer Act.

TEX.BUS. & COM.CODE ANN. sec. 6.105 (Vernon 1968) provides that any bulk transfer subject to chapter 6 (with one inapplicable exception) is ineffective against any creditor of the transferor *unless at least ten days before he takes possession of the goods* or pays for them, whichever happens first, the transferee gives notice of the transfer in the manner and to the persons provided in chapter 6.

A "bulk transfer" is any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory of an enterprise subject to chapter 6. TEX.BUS. & COM.CODE ANN. sec. 6.102(a) (Vernon 1968). In the instant case, the jury found that A to Z Grocery, Inc. transferred a major portion of its materials, supplies, merchandise or other inventory to appellant Blair. Appellants do not challenge this finding, and the evidence clearly substantiates that the transfer from A to Z Grocery, Inc. to Blair was a "bulk transfer" and subject to the provisions of chapter 6. Appellants contend, however, that the transfer to Blair fell within the purview of sec. 6.103(3) which provides an exemption for "[t]ransfers in settlement or realization of a lien or other security interest." TEX.BUS. & COM.CODE ANN. sec. 6.103(3) (Vernon 1968). Appellee counters that the exemption of sec. 6.103(3) does not apply because: 1) appellants are required to plead the exemption as an affirmative defense under TEX.R.CIV.P. 94; and, 2)

appellants have not shown that the notes to the two secured creditors were in default and subject to foreclosure.

■ There are no Texas cases requiring that the exemption allowed by sec. 6.103(3) be pled as an affirmative defense and we decline to require such pleading. Accordingly, we will proceed to address the issue of whether the exemption allowed by sec. 6.103(3) of the Texas Bulk Transfer Act is applicable to the subject transaction.

Neither party has cited us to any Texas cases construing sec. 6.103(3), and our own extensive research has revealed none. However, inasmuch as Texas enacted the Bulk Transfer Act in an attempt to simplify and make uniform the bulk sales laws of the states that adopt the Act, TEX.BUS. & COM.CODE ANN. sec. 6.101 comment 1 (Vernon 1968), we have reviewed decisions of other states to determine how sec. 6.103(3) has been construed.

There still appears to be very little case law interpreting the statute in question. The case of *Starman v. John Wolfe, Inc.*, 490 S.W.2d 377 (Mo.App.—St. Louis 1973), dealt with a situation wherein the court held that the bulk transfer was *not* exempt under 6.103(3) for three reasons: 1) there was no evidence that the secured party had a right to foreclose or demand delivery of the goods at the time of the transfer because there was no evidence that the debtor was in default of any security agreement; 2) to be exempt under sec. 6.103(3) the transfer should be made to the holder of the security interest and not to the transferee for the benefit of the secured party; and, 3) not all of the consideration paid at closing was used to extinguish the secured party's lien, which resulted in some creditors being preferred over other creditors.

Two subsequent cases have upheld a transfer of assets from the debtor to a third party, and have not required that the assets be transferred directly to the se-

cured party. *See Techsonic Industries v. Barney's Bassin' Shop*, 621 S.W.2d 332 (Mo.App., S.D.1981); *American Metal Finishers, Inc. v. Palleschi*, 55 A.D.2d 499, 391 N.Y.S.2d 170 (1977). *Techsonic* distinguished the holding in *Starman* saying that in the latter case there was no evidence of a default, whereas in *Techsonic* there was definitely a default and all the proceeds went to the secured party. *American Metal* distinguished *Starman* saying that in *Starman* not all the proceeds were used to pay the secured party, whereas this was not the case in *American Metal*.[3]

■■ We hold that in order for a transfer to be exempt under sec. 6.103(3) there must be evidence of a default on the part of the debtor which results in the secured party having a present right to foreclose. *See also United States Shoe Corp. v. Cudmore-Neiber Shoe Co.*, 419 F.Supp. 135, 138–39 (D.S.D., W.D.1976). In the case at bar, there was no evidence that either InterFirst Bank Irving or First City Bank Central Arlington, N.A. had the present right to foreclose on the debt which was secured by the equipment and inventory in appellants' store. Therefore, appellants were not entitled to claim that the transfer to Blair was exempt under sec. 6.103(3). In light of our holding, we will not reach the issue of whether the exemption allowed by sec. 6.103(3) requires that the transfer be made directly to the secured party, or whether it may be made to a third party so long as all of the proceeds are applied on the secured debt. Accordingly, we overrule appellants' fourth point of error.

Appellants' fifth point of error contends alternatively that there is either no evidence to support the jury's verdict in response to Special Issue No. 7, or that the verdict is so against the great weight and preponderance of the evidence as to be clearly unjust.

**3.** We note that in *American Metal* there were two secured parties and the evidence showed that the debtor was clearly in default as to one of the secured parties; however, there is no evidence or discussion regarding whether the debtor was in default as to the second secured party.

■ In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidences and inferences to the contrary. *See Stodghill v. Texas Emp. Ins. Ass'n*, 582 S.W.2d 102, 103 (Tex.1979); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate*, 244 S.W.2d at 661–62.

■ A "no evidence" point of error must and may only be sustained when the record discloses one of the following: 1) a complete absence of evidence of a vital fact; 2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; 3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; 4) the evidence establishes conclusively the opposite of a vital fact. *Royal Indem. Co. v. Little Joe's Catfish Inn*, 636 S.W.2d 530, 531 (Tex.App.—San Antonio 1982, no writ); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361 (1960).

■ In reviewing a point of error asserting that a finding is "against the great weight and preponderance" of the evidence, we must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. *See Royal Globe Ins. Co. v. Suson*, 626 S.W.2d 161, 163 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.). So considering the evidence, if a jury finding is so contrary to the weight and preponderance of the evidence as to be clearly wrong and unjust, the point should be sustained, the judgment of the trial court reversed, and the cause remanded for a new trial. *Ford Motor Co. v. Nowak*, 638 S.W.2d 582, 585 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). This is true even though the finding is supported by more than a scintilla of evidence and even though reasonable minds could differ about the conclusion to be drawn from the evidence. *Id.*

■ In considering whether the jury finding is against the great weight and preponderance of the evidence, we must remain cognizant of the fact that it is for the jury, as the trier of the fact, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. *See Taylor v. Lewis*, 553 S.W.2d 153, 161 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). This court may not substitute its judgment for that of the jury if the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence. *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.).

Appellants' extremely brief argument in this regard merely states that since the record is unclear as to the exact date that Blair took possession of the goods, there is no reference point from which it can be determined whether or not appellants' notice of bulk transfer was imparted ten days prior to the time the transferee took possession of the goods. We disagree.

■ Cullen testified that Blair took possession of the assets of A to Z Grocery, Inc. on or about December 1, 1982, while Blair testified by deposition that he took possession of the assets on December 3, 1982, and thereupon began to operate the store and hire new employees. We find that the latest date that Blair actually took possession of the corporate assets was December 3, 1982 and it is undisputed that appellants' first "Notice of Intended Bulk Transfer" was not sent to the corporation's creditors until December 8, 1982. Therefore, we hold that there was sufficient evidence for the jury to conclude that Blair failed to give notice of the intended bulk transfer to the creditors of A to Z Grocery, Inc. at least ten days before he took possession of the goods. Appellants' fifth point of error is overruled.

Appellants' fifth,[4] sixth, seventh, eighth, ninth, tenth, and twelfth points of error relate to appellee's recovery against appellant Blair under the fraudulent conveyance theory. In view of our holding with regard to points of error numbers four and five dealing with the alternative theory of recovery due to appellants' failure to comply with the Bulk Sales Act, we find it unnecessary to review these points of error.

Appellants' eleventh point of error contends that the trial court erred in rendering judgment against appellants for attorneys' fees incurred in the preparation of appellee's claim against A to Z Grocery, Inc. This point is supported by no authorities and no argument. As such, this point of error fails to meet the minimum briefing rules of TEX.R.CIV.P. 418 and is considered to be waived. *See Hatch v. Davis*, 621 S.W.2d 443, 447 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); *Estate of Blardone v. McConnico*, 604 S.W.2d 278, 283 (Tex.Civ.App.—Corpus Christi), *writ ref'd n.r.e. per curiam*, 608 S.W.2d 618 (Tex.1980). Accordingly, point of error eleven is overruled.

The judgment is affirmed.

**4.** Appellants apparently misnumbered their points of error in their brief, which action resulted in two different points of error being numbered "five".