812 F.2d 1063
 3 UCC Rep.Serv.2d 206
 STONE'S PHARMACY, INC., Appellant,
v.
PHARMACY ACCOUNTING MANAGEMENT, INC., d/b/a Pam Computer
Systems and FoxMeyer Corporation, FoxMeyer TBL,
Inc., and FoxMeyer Information Systems, Appellees.
 No. 86-1619.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 12, 1986.
Decided March 3, 1987.
Rehearing Denied April 7, 1987.
 
 Stanley D. Rauls, Little Rock, Ark., for appellant.
 Mark Randall, Dallas, Tex., for appellees.
 Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and HUNTER*, Senior District Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 Stone's Pharmacy, Inc. appeals the district court's order granting summary judgment in favor of FoxMeyer Corp., FoxMeyer-TBL, Inc., and FoxMeyer Information Systems (FoxMeyer). Stone's Pharmacy filed this action against FoxMeyer, alleging that FoxMeyer failed to comply with the Bulk Transfers Act--Article 6 of the Uniform Commercial Code, and that FoxMeyer tortiously interfered with the contract between Stone's Pharmacy and Pharmacy Accounting Management, Inc. (PAM). The district court held that the Bulk Transfers Act does not apply because the alleged bulk transfer was not fraudulent, because Stone's Pharmacy was not a "creditor," and because the transfer was in settlement or realization of a lien or other security interest. The court also held that FoxMeyer did not cause PAM's failure to perform its contractual obligations to Stone's Pharmacy. For the reasons set forth below, we reverse and remand.
 
 I. BACKGROUND
 
 2
 In December 1984 Stone's Pharmacy purchased a pharmacy computer system from PAM for $29,900. The terms of the sale included a maintenance agreement whereby PAM would provide hardware and software support, including parts, labor, and expenses, for three months. On January 17, 1985, FoxMeyer purchased $300,000 worth of inventory and assets owned by PAM. As a condition of the purchase, FoxMeyer required PAM to obtain releases of security interests held by InterFirst Bank. The bank, in turn, required PAM to pay it the full amount of the proceeds from the sale. PAM paid the bank, but the proceeds only partially satisfied the secured debt.
 
 
 3
 Stone's Pharmacy sought to have both PAM and FoxMeyer honor PAM's maintenance agreement, but both refused. Stone's Pharmacy filed this action against PAM and FoxMeyer. PAM filed for bankruptcy and the case proceeded against FoxMeyer.
 
 
 4
 Stone's Pharmacy alleged that PAM transferred a major or substantial part of its business to FoxMeyer and that FoxMeyer failed to give notice to PAM's creditors, including Stone's Pharmacy, as required by the Bulk Transfers Act. Stone's Pharmacy also alleged that FoxMeyer tortiously interfered with the contractual rights and obligations between PAM and Stone's Pharmacy. Stone's Pharmacy contended that by purchasing PAM's inventory and assets FoxMeyer caused PAM's failure to perform the maintenance agreement. FoxMeyer moved for summary judgment, contending that the Bulk Transfers Act does not govern the transfer. FoxMeyer also contended that it could not have caused PAM's failure to perform the contract because Stone's Pharmacy owns a 32-byte system and FoxMeyer purchased only PAM's 8-byte inventory.
 
 
 5
 In granting summary judgment in favor of FoxMeyer, the court acknowledged that an issue of fact existed as to whether the transaction transferred a major part of PAM's inventory. Nevertheless, the court held that the Act was inapplicable because (1) the transfer was not fraudulent; (2) Stone's Pharmacy had no right or liquidated claim against PAM and therefore was not a "creditor" under the Act; and (3) the transfer fell within the exception to the Act exempting transfers in settlement or realization of a lien or other security interest. The court also held that because FoxMeyer purchased only PAM's 8-byte inventory it could not have caused PAM's failure to perform the contract with Stone's Pharmacy. That failure, the court held, was the result of PAM's financial troubles.
 
 
 6
 On appeal Stone's Pharmacy contends that the district court's holding is erroneous in each respect. We think these facts require a reversal and remand.
 
 II. DISCUSSION
 A. Bulk transfers claim
 
 7
 We note at the outset that the district court did not determine which state's Bulk Transfers Act applies in this case. The agreement between FoxMeyer and PAM, however, indicates that the inventory and assets transferred by PAM were located in Texas. Therefore, we hold that Texas' Bulk Transfers Act applies. See Tex.Bus. & Com.Code Ann. Sec. 6.102(d) ("all bulk transfers of goods located within this state are subject to this chapter").[1]
 
 
 8
 Stone's Pharmacy contends that the court erred in holding that the transaction must be fraudulent in order to be governed by the Act. Stone's Pharmacy argues that the Act was designed to cover any and all transfers satisfying the requirements of section 6.102, and that section 6.102 does not require the transfer to be fraudulent. FoxMeyer argues, on the other hand, that because the purpose of the Act is to protect the transferor's creditors from common commercial fraud, the Act only addresses fraudulent transactions. We agree with Stone's Pharmacy. While the Act is designed to protect unsecured creditors from fraudulent dispositions of inventory, see id. Sec. 6.101, Comment 2; Bergen, Johnson & Olson v. Verco Manufacturing Co., 690 S.W.2d 115, 117-18 (Tex.Ct.App.1985), it does not necessarily follow that the Act applies only to fraudulent transactions. In an attempt to prevent fraudulent dispositions of assets, the Act expressly applies to "any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory." Tex.Bus. & Com.Code Ann. Sec. 6.102(a) (emphasis added). Therefore, any transfer that meets the requirements of section 6.102, whether or not it is fraudulent, is subject to the Bulk Transfers Act. See id. Sec. 6.101, Comment 5 (recognizing that the Act necessarily encompasses legitimate transfers). Accordingly the district court erred in holding that only fraudulent transactions are governed by the Act.
 
 
 9
 The district court held that Stone's Pharmacy was not a creditor because it "had no right or liquidated claim at the time of the challenged transfer." Stone's Pharmacy argues that the Bulk Transfers Act draws no distinction between liquidated or unliquidated claims and requires that notice be given to all "persons who are known to the transferee to hold or assert claims against the transferor." Id. Sec. 6.107(c). FoxMeyer argues that at the time of the sale Stone's Pharmacy had only a potential cause of action against PAM for breach of contract. We agree with Stone's Pharmacy. The Act provides that "those holding claims [against the transferor] based on transactions or events occurring before the bulk transfer" are considered "creditors." Tex.Bus. & Com.Code Ann. Sec. 6.109(a). "The claims referred to of course include unliquidated claims." Id. Sec. 6.109(a), Comment 1. See Fischer v. Rio Tire Co., 65 S.W.2d 751, 756 (Tex.Ct.App.1933) (referring to the dictionary meaning of "creditor"--"[h]e who has a right to require fulfillment of an obligation or contract"--and noting that the term is "not restricted to any particular class of creditors, but includes all persons who were creditors of the seller at the time of the sale, although their claims had not been reduced to judgment, or were not due, and although they were not creditors for merchandise, but were merely general creditors of the seller in other transactions"). It is undisputed that FoxMeyer knew that Stone's Pharmacy was a 32-byte customer and that it had a maintenance agreement with PAM. The maintenance agreement is based on a transaction that occurred prior to the transfer. The fact that Stone's Pharmacy has an unliquidated claim makes no difference. Therefore the court erred in holding that Stone's Pharmacy was not a "creditor."
 
 
 10
 The court also erred in holding that the transaction was not subject to the requirements of the Act because it was exempt as a transfer in settlement or realization of a lien or other security interest. See Tex.Bus. & Com.Code Ann. Sec. 6.103(3). At least two courts have held that the exception in section 6.103(3) applies not only when the assets are transferred directly to the secured creditor, but also when, as in this case, the assets are transferred to a third party and the proceeds are paid to the secured creditor. Techsonic Industries v. Barney's Bassin' Shop, 621 S.W.2d 332, 334 (Mo.Ct.App.1981); American Metal Finishers, Inc. v. Palleschi, 55 A.D.2d 499, 391 N.Y.S.2d 170, 172 (1977). One court, however, has held that to be exempt under section 6.103(3) the transfer must be to the holder of the security interest and not to a third party for the benefit of the secured creditor. Starman v. John Wolfe, Inc., 490 S.W.2d 377, 382 (Mo.Ct.App.1973). (The court also held that the transfer was not exempt under section 6.103(3) because there was no evidence of default and not all the proceeds of the transfer were used to extinguish the debt.). See also Techsonic Industries, supra, 621 S.W.2d at 334-35 (Maus, C.J., dissenting). The majority in Techsonic Industries distinguished the Starman decision, stating that in Starman not all the proceeds went to the secured creditor and there was no evidence of default. Techsonic Industries, 621 S.W.2d at 334. In both Techsonic Industries and American Metal all the proceeds went to the secured creditor and there was evidence of default.
 
 
 11
 The common requirements in these cases are that the transferor must be in default and all the proceeds must be paid to the secured creditor. In Hixson v. Pride of Texas Distributing Co., 683 S.W.2d 173, 178 (Tex.Ct.App.1985), the only Texas case addressing these issues, the court recognized these common requirements. The court held that in order for a transaction to fall within the exception in section 6.103(3) there must be evidence of default, resulting in the secured creditor having a present right to foreclose. Because the secured creditors in that case had no such right, the court concluded that the exception did not apply and there was no need to decide whether the assets must be transferred directly to the secured creditor.
 
 
 12
 Here, all the proceeds were paid to the secured creditor, InterFirst Bank. But the district court did not determine whether InterFirst had the present right to foreclose. An inference could be drawn, however, that PAM was in default and that the bank had such a right. The record indicates that PAM's liabilities exceeded its assets for months prior to the alleged bulk transfer. We cannot draw such an inference, however. This appeal is from an order granting FoxMeyer's motion for summary judgment and, as such, we cannot draw inferences in favor of FoxMeyer as the moving party and the party in whose favor summary judgment was granted. Therefore, a material issue of fact exists as to whether the transaction falls within the exception in section 6.103(3). Consequently, the court erred on this record in granting summary judgment on the ground that the transfer fell within that exception.
 
 
 13
 Because of these unresolved factual issues, we reverse and remand for further proceedings. We suggest that the district court first determine what part of PAM's inventory was in fact transferred to FoxMeyer and whether it was "a major part."[2] If a major part was not transferred, that should end the matter, but if a major part was transferred, then the court should determine whether the exception in section 6.103(3) applies. That is, whether the secured creditor had a present right to foreclose and, if so, whether Texas would follow the Missouri and New York decisions as discussed above.
 
 
 14
 This case is perplexing in that we think the defendants might be subject to the proscriptions of the Bulk Transfers Act, but on the other hand it is difficult to perceive how the plaintiff can benefit if the strictures of the Act are applied. If the Act does apply, the district court should also require Stone's Pharmacy to show how it was damaged. We question whether Stone's Pharmacy was prejudiced by FoxMeyer's noncompliance. Stone's Pharmacy would not have been placed in a better position had it been given notice. It is true that a noncomplying transferee's liability is that of a receiver who is bound to see that the transferred property or its value is applied to the satisfaction of the creditors' claims. Anderson & Clayton Co. v. Earnest, 610 S.W.2d 846, 848 (Tex.Ct.App.1980). Yet, any pretransfer security interest survives a noncomplying transfer. In re McBee, 714 F.2d 1316, 1328 (5th Cir.1983). InterFirst Bank held a security interest in substantially all of PAM's assets and inventory. All the proceeds of the transfer went to InterFirst and did not extinguish the debt. Stone's Pharmacy has not demonstrated how its unsecured claim would have been superior to InterFirst's claim.[3]
 
 
 15
 During oral argument, however, counsel for Stone's Pharmacy argued that had notice been given, Stone's Pharmacy might have produced a buyer who would have assumed all of PAM's liabilities. Stone's Pharmacy referred to a Mr. John Carney, who had proposed a leveraged buyout of PAM's assets. The mere assertion that Stone's Pharmacy might have produced a buyer is insufficient. Stone's Pharmacy would have to provide, at the very least, a ready, willing, and able buyer. The record indicates that Carney may have been willing, but he was not ready or able to implement his proposal at the time FoxMeyer began negotiations and when it finally made its offer. Carney was still in the process of finding investors.
 
 B. Interference with contract
 
 16
 The court held that FoxMeyer could not have caused PAM's failure to perform its contractual obligations concerning the 32-byte computer bought by Stone's Pharmacy because FoxMeyer purchased only PAM's 8-byte inventory. Stone's Pharmacy argues that this holding is inconsistent with the court's acknowledgment that a factual issue existed as to how much inventory was transferred to FoxMeyer. We agree. The record indicates that there is a dispute as to what and how much inventory was in fact transferred.[4] Therefore we cannot say as a matter of law that FoxMeyer purchased only PAM's 8-byte inventory or less than "a major part" of the inventory. The court also held that PAM's financial condition caused it to breach its contract with Stone's Pharmacy. We disagree. If the 32-byte inventory existed in FoxMeyer's possession, as alleged, then it may be said that if Pam had not transferred that inventory, it might have used it to service the system bought by Stone's Pharmacy. We cannot say as a matter of law then that PAM's financial condition prevented it from performing its obligations, although a trial on this issue could appropriately support a factual finding accordingly. Therefore, that portion of the decision concerning the tortious interference claim is reversed, and we remand for further proceedings.
 
 III. CONCLUSION
 
 17
 Reversed and remanded for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Elmo B. Hunter, United States Senior District Judge for the Western District of Missouri, sitting by designation
 
 
 [1]
 The Texas Bulk Transfers Act provides that any bulk transfer subject to the Act is ineffective against any creditor of the transferor who did not receive from the transferee prior notice that the transfer was to take place. Tex.Bus. & Com.Code Ann. Sec. 6.105. "A 'bulk transfer' is any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory * * * of an enterprise subject to this chapter." Id. Sec. 6.102(a)
 
 
 [2]
 The court in Bergen, supra, stated: "No Texas case has determined what constitutes a transfer of 'a major part.' Other jurisdictions which have adopted this language have construed 'a major part' as meaning a transfer in excess of fifty percent of the aggregate inventory of the transferor's enterprise." 690 S.W.2d at 118 (citations omitted). The court also stated that a comparison must be made between the inventory transferred and the total inventory that the transferor had on hand before the transfer. Id. at 119
 
 
 [3]
 This may be merely another way of saying that the transfer of assets and inventory to FoxMeyer was in settlement or realization of InterFirst's security interest, even though the assets were not transferred directly to InterFirst. See generally Ouachita Electric Cooperative v. Evans-St. Clair, 672 S.W.2d 660, 664 (Ark.Ct.App.1984). As we said, we cannot decide this issue because the district court made no finding and the record does not indicate as a matter of law that PAM was in default, giving InterFirst the right to foreclose
 
 
 [4]
 FoxMeyer's Exhibit A indicates that three months prior to the transfer PAM's inventory alone was valued at $873,387.34. Deposition testimony indicates that PAM transferred less than fifty percent of this inventory to FoxMeyer. See, e.g., Bresler Deposition at 14-16. Stone's Pharmacy, on the other hand, submitted Exhibits C and D, which indicate that the property that FoxMeyer did not purchase was worth only $50,000 and was sold by the bankruptcy trustee for $7,861.50